634 A.2d 1106

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Paul GAMBOA–TAYLOR, Appellant.**

Supreme Court of Pennsylvania.

Argued May 4, 1993.

Decided Dec. 9, 1993.

R. Bruce Evanick, York, for appellant.

H. Stanley Rebert, Dist. Atty., Robert A. Graci, Chief Deputy Atty. Gen., for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the direct appeal[1] of Paul Gamboa–Taylor (Appellant) from the sentences of death imposed on him by the Court

---

1. Our court automatically reviews all death penalty sentences pursuant to 42 Pa.C.S. Section 9711(h). That section provides as follows:

   (h) Review of death sentence.—

of Common Pleas of York County following Appellant's pleas of guilt to five murders and his subsequent convictions of murder of the first degree for each killing.

Appellant pled guilty generally to murder on December 19, 1991, and a degree of guilt hearing was conducted on January 10, 1992. Appellant was found guilty on all five counts of murder of the first degree by the Honorable John Chronister, Judge of the Court of Common Pleas of York County. Following these convictions, Judge Chronister conducted a separate sentencing hearing pursuant to 42 Pa.C.S. § 9711 and determined that the penalty of death was appropriate for four of the five murders and that a penalty of life imprisonment was proper for the remaining murder. Appellant did not file post-verdict motions and formal sentence was imposed on Appellant on January 23, 1992.

Appellant has preserved no issues for our review and, therefore, the only issue before us in this proceeding is whether the death sentences imposed comport with our Death Penalty Statute. In such situations, our statutory obligation requires that we determine: (1) whether the sentences of

(1) A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.

(2) In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for further proceedings as provided in paragraph (4).

(3) The Supreme Court shall affirm the sentence of death unless it determines that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

(4) If the Supreme Court determines that the death penalty must be vacated because none of the aggravating circumstances are supported by sufficient evidence or because the sentence of death is disproportionate to the penalty imposed in similar cases, then it shall remand for the imposition of a life imprisonment sentence. If the Supreme Court determines that the death penalty must be vacated for any other reason, it shall remand for a new sentencing hearing pursuant to subsections (a) through (g).

As amended 1988, Dec. 21, P.L. 1862, No. 179, Sec. 2, imd. effective.

death were the product of passion, prejudice or any other arbitrary factor; (2) whether the evidence fails to support the finding of at least one specified aggravating circumstance; or (3) whether the sentences are excessive or disproportionate to the penalty imposed in similar cases considering both the circumstances of the crime and the character and record of the defendant. 42 Pa.C.S. § 9711(h). *Commonwealth v. Heidnik*, 526 Pa. 458, 587 A.2d 687 (1991); *Commonwealth v. Appel*, 517 Pa. 529, 539 A.2d 780 (1988).

Additionally, as in all death penalty cases, we review the record to determine for ourselves whether the evidence is sufficient to support the underlying convictions of murder of the first degree. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict winner to determine whether the fact finder reasonably could have concluded that all the elements of the crime were established beyond a reasonable doubt. *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992).

The facts that can be gleaned from that review establish that on May 18, 1991, Appellant, his wife Valerie, and their three minor children, Paul, Jasmine and Rockelle, lived in York, Pennsylvania, with Valerie's mother, Donna Barshinger, and Donna's infant son Lance. Appellant came home that night at approximately 1:00 a.m and found everyone asleep, except for Valerie who was out.

Despondent over his drug addiction and his wife's indifference to his narcotics dependency, Appellant went to his tool box and retrieved a ball-peen hammer. Appellant, armed with this hammer and a kitchen knife, first went to the bedroom of his sleeping mother-in-law, Donna, and hammered her three times in the head and then slit her throat and face with the knife, killing her. Leaving her blood-soaked body, he turned his attention to Donna's two-year-old baby, Lance. Lance was

bludgeoned to death with the hammer, which Appellant used on the left side of the child's head at least five times until he bled through the mattress and onto the bedroom floor.

Across the hall from Donna's and Lance's bedroom Appellant's three children, Jasmine, Paul, and Rockelle, were asleep in another bedroom. Appellant entered this room and attacked two year old Jasmine and four year old Paul. Jasmine sustained three hammer blows to the head and Paul was subjected to being hammered five times in the head. Neither child survived. Rockelle, the youngest child, however, was spared and placed by Appellant unharmed in the living room, where he and little Rockelle waited eleven hours, or until noon, for Valerie's return.

Valerie was with a friend, Tina Smith, from about 9:00 p.m. the previous evening until noon when Tina brought Valerie home so that she could pick up a pair of slacks. Once Valerie was inside the house, however, Appellant went to Tina's car and told her that Valerie would give her the slacks later that day and Tina left. Appellant then hammered Valerie to death, tied a green plastic bag over her head to gather the blood and added her lifeless body to the carnage, placing it beside the body of Jasmine, whose corpse had been covered with a white sheet and pillows.

Appellant then hid the hammer under the kitchen sink and attempted to commit suicide by slashing his wrists and stabbing himself in the abdomen. When neither of these attempts brought about death, Appellant tried to electrocute himself in the bathtub with an electric hairdryer. Finally, Appellant called 911 for help and the police were dispatched to the source of the call.

Upon arriving, the police could hear screaming in the house and broke in to find Appellant naked in the bathtub and blood everywhere along with Ap; .llant's victims and little Rockelle. Appellant was hospitalized for his injuries and survived. During his subsequent incarceration, Appellant wrote a letter of confession to the police on June 15, 1991, admitting his guilt,

stating his intent to kill his victims and identifying the order in which the killings occurred.

Psychological and psychiatric evaluations of Appellant were conducted and when it was established that he was competent to stand trial, Appellant pled guilty to murder generally. At the degree of guilt hearing, the autopsy reports were admitted into evidence to establish that the victims' deaths were homicides. Valerie's friend, Tina Smith, was able to place Appellant at the murder scene, and the court accepted into evidence the hammer and Appellant's confession as evidence to establish that the murders were intentional killings. From this wealth of evidence, there is no doubt in our minds that the five first degree murder convictions were sustainable and that overwhelming evidence can support them.

█ Additionally, we can find no evidence to suggest that the sentences of death are the product of passion, prejudice or any other arbitrary factor.

Following the sentencing hearing, the trial court, as fact finder, determined that, as to the murders of the three children, Lance, Paul and Jasmine, the evidence supported a finding of aggravating circumstances sixteen, i.e., that the victim was a child under twelve years of age (42 Pa.C.S. § 9711(d)(16)), as well as aggravating circumstance eleven, i.e., that Appellant had been convicted of another murder, committed either before or at the time of the offense at issue (the murder of Appellant's mother-in-law, Donna) 42 Pa.C.S. § 9711(d)(11).

The trial court, as fact finder, found that aggravating circumstance eleven also existed with regards to the murder of Valerie. The trial court found no aggravating circumstances to have been established with regards to the murder of Appellant's mother-in-law, Donna Barshinger and, pursuant to 42 Pa.C.S. § 9711(c)(1)(iv), imposed a sentence of life imprisonment.

The evidence clearly establishes the ages of the children as being under twelve years of age and, therefore, aggravating circumstance sixteen was properly found. Additionally, the

murder of Appellant's mother-in-law, Donna, occurring prior to the other deaths, supports the finding of a murder committed before the other offenses at issue (aggravating circumstance 11). *Commonwealth v. Heidnik,* 526 Pa. 458, 587 A.2d 687 (1991).

The trial court, as fact finder, also determined the existence of mitigating circumstances, i.e., the lack of a prior record, 42 Pa.C.S. § 9711(e)(1), and, generally, that of remorse, 42 Pa. C.S. § 9711(e)(8), but concluded that the aggravating circumstances were sufficient to outweigh any mitigating circumstances. As to Valerie's death, the court found that these two mitigating circumstances did not outweigh the one aggravating circumstance, and since sufficient evidence supports the aggravating circumstance found, there is no basis upon which we can reverse the court's conclusion as to the penalty.

Finally, as required by 42 Pa.C.S. § 9711(h)(3)(iii), we have conducted an evaluation of all convictions of murder of the first degree prosecuted under our Death Penalty Statute. Our review of the data supplied by the Administrative Office of Pennsylvania Courts (AOPC) (see *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984)), pertaining to similar cases, leads us to conclude that the sentences of death imposed herein are not excessive or disproportionate.

Accordingly, we sustain the convictions of murder of the first degree and affirm the sentences of death and direct the Prothonotary of the Supreme Court of Pennsylvania to transmit the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court to the Governor.

LARSEN, J., did not participate in the decision of this case.