753 A.2d 780

COMMONWEALTH of Pennsylvania, Appellee,

v.

Paul GAMBOA–TAYLOR, Appellant.

Supreme Court of Pennsylvania.

Submitted Feb. 25, 2000.

Decided June 19, 2000.

Robert Brett Dunham, Christina Swarns, Philadelphia, for Paul Gamboa-Taylor.

Christy Fawcett, Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

This is an appeal from the denial of the second petition of Paul Gamboa–Taylor (Appellant) for post-conviction relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546. Because Appellant's petition is untimely, we affirm the trial court.

This Court previously summarized the facts of this case as follows:

[O]n May 18, 1991, Appellant, his wife Valerie, and their three minor children, Paul, Jasmine and Rockelle, lived in York, Pennsylvania, with Valerie's mother, Donna Barshinger, and Donna's infant son Lance. Appellant came home that night at approximately 1:00 a.m. and found everyone asleep, except for Valerie who was out.

Despondent over his drug addiction and his wife's indifference to his narcotics dependency, Appellant went to his tool box and retrieved a ball-peen hammer. Appellant, armed

with this hammer and a kitchen knife, first went to the bedroom of his sleeping mother-in-law, Donna, and hammered her three times in the head and then slit her throat and face with the knife, killing her. Leaving her blood-soaked body, he turned his attention to Donna's two-year-old baby, Lance. Lance was bludgeoned to death with the hammer, which Appellant used on the left side of the child's head at least five times until he bled through the mattress and onto the bedroom floor.

Across the hall from Donna's and Lance's bedroom Appellant's three children, Jasmine, Paul, and Rockelle, were asleep in another bedroom. Appellant entered this room and attacked two year old Jasmine and four year old Paul. Jasmine sustained three hammer blows to the head and Paul was subjected to being hammered five times in the head. Neither child survived. Rockelle, the youngest child, however, was spared and placed by Appellant unharmed in the living room, where he and little Rockelle waited eleven hours, or until noon, for Valerie's return.

Valerie was with a friend, Tina Smith, from about 9:00 p.m. the previous evening until noon when Tina brought Valerie home so that she could pick up a pair of slacks. Once Valerie was inside the house, however, Appellant went to Tina's car and told her that Valerie would give her the slacks later that day and Tina left. Appellant then hammered Valerie to death, tied a green plastic bag over her head to gather the blood and added her lifeless body to the carnage, placing it beside the body of Jasmine, whose corpse had been covered with a white sheet and pillows.

Appellant then hid the hammer under the kitchen sink and attempted to commit suicide by slashing his wrists and stabbing himself in the abdomen. When neither of these attempts brought about death, Appellant tried to electrocute himself in the bathtub with an electric hairdryer. Finally, Appellant called 911 for help and the police were dispatched to the source of the call.

Upon arriving, the police could hear screaming in the house and broke in to find Appellant naked in the bathtub and

blood everywhere along with Appellant's victims and little Rockelle. Appellant was hospitalized for his injuries and survived. During his subsequent incarceration, Appellant wrote a letter of confession to the police on June 15, 1991, admitting his guilt, stating his intent to kill his victims and identifying the order in which the killings occurred.[1]

On December 19, 1991, following full oral and written plea colloquies, Appellant entered a general plea to criminal homicide for the brutal murders of his wife, his two minor children, his mother-in-law and her infant child. The trial court conducted a degree of guilt hearing on January 10, 1992. At the commencement of the degree of guilt hearing, the trial court engaged in a second colloquy, which addressed Appellant's decision not to present any defense to the Commonwealth's charges. After entry of the Commonwealth's evidence, the trial court found Appellant guilty of five counts of first-degree murder. During the penalty phase proceedings on Appellant's capital murder convictions that followed, the trial court conducted a third colloquy, this time addressing Appellant's decision not to present any evidence of mitigating circumstances or to in any way defend the Commonwealth's request for a sentence of death. After hearing the Commonwealth's evidence regarding aggravating circumstances, the trial court determined that a penalty of death was appropriate for four of the murder convictions and that a penalty of life imprisonment was appropriate for the remaining murder conviction. In his automatic direct appeal to this Court, Appellant presented no claim of error and, on December 9, 1993, this Court affirmed the judgment of the trial court. *Commonwealth v. Gamboa–Taylor*, 535 Pa. 266, 634 A.2d 1106 (1993).

On January 13, 1997, Appellant, proceeding pro se, filed his first petition for collateral review under the PCRA.[2] The

1. This factual discussion is borrowed from our opinion addressing Appellant's direct appeal in *Commonwealth v. Gamboa–Taylor*, 535 Pa. 266, 634 A.2d 1106,1107–08 (1993).

2. Appellant filed his first PCRA petition more than three years after we affirmed on direct appeal. This petition was timely despite the time limitations discussed *infra*. The 1995 amendments to the PCRA provided that a first-time PCRA petitioner whose judgment of sentence be-

PCRA court appointed counsel, who filed an amended PCRA petition. In the amended PCRA petition, Appellant alleged that trial counsel was ineffective for failing to override Appellant's decisions as to trial strategy at the penalty stage, specifically, Appellant's demand that trial counsel not present mitigating evidence or defend the Commonwealth's request for the imposition of a death sentence. The PCRA court conducted hearings on the matter, at which Appellant and trial counsel testified. The PCRA court denied Appellant's PCRA petition concluding that trial counsel had advised Appellant properly concerning all aspects of the criminal proceedings, and in particular, that trial counsel informed Appellant that the trial court would likely impose a death sentence if Appellant chose not to present mitigating evidence during the penalty phase of his trial. Furthermore, the PCRA court noted that the trial court had required psychological and psychiatric evaluations of Appellant prior to the entry of his guilty plea, which evaluations established that Appellant was competent to stand trial and was able to fully comprehend the consequences of not presenting evidence as to mitigating circumstances. The PCRA court concluded that Appellant did not present evidence to establish that he was incapable of making knowing and intelligent decisions and that trial counsel could not be deemed ineffective for not overriding Appellant's directives. This Court affirmed the decision of the PCRA court on August 20, 1998. *Commonwealth v. Gamboa Taylor*, 553 Pa. 144, 718 A.2d 743 (1998).

On February 5, 1999, Appellant, through current counsel, filed a document with the PCRA court captioned: "Amended Petition for *Habeas Corpus* Relief Pursuant to Article I, Section 14 of the Pennsylvania Constitution and 42 Pa.C.S.A. § 6503 and Statutory Post Conviction Relief under 42 Pa.

came final on direct appeal on or before the effective date of the amendments could file a first PCRA petition within one year of the effective date of the amendments (January 16, 1996). *See* Section 3(1) of the Act of Nov. 17, 1995 (Spec.Sess. No. 1) P.L. 1118, No. 32. Thus, as a "Grandfather Clause," every prisoner who had not previously brought a petition for collateral relief, could file a first petition by January 16, 1997, and said petition would be timely without regards to the date of final judgment.

C.S.A. § 9542 *et seq.* and Consolidated Memorandum of Law." [3] On March 22, 1999, the Commonwealth filed a motion to dismiss the petition without a hearing asserting that the document filed by Appellant was a second PCRA petition, which was filed untimely pursuant to 42 Pa.C.S.A. § 9545(b). The PCRA court dismissed the petition without a hearing. The PCRA court, however, vacated its initial order and conducted a hearing solely for purposes of addressing the issue of timeliness. After the hearing, the PCRA court concluded that Appellant's petition was a second PCRA petition and that the petition must be dismissed as untimely. Appellant now appeals the dismissal of his second PCRA petition to this Court.

Because Appellant filed his second PCRA petition after the January 16, 1996 effective date of the 1995 amendments, those amendments, which establish a time limitation for the bringing of PCRA petitions, apply in the instant case. *See Commonwealth v. Laird,* 555 Pa. 629, 726 A.2d 346 (1999). In accordance with the 1995 amendments, a petition for PCRA relief must be brought within one year of final judgment on the petitioner's case.[4] A judgment becomes final at the conclusion

3. Prior to filing the petition at issue here, current counsel, the Defender Association of Philadelphia, filed a document entitled: "Petition for Writ of Habeas Corpus and Consolidated Preliminary Memorandum of Law" with the United States District Court for the Middle District of Pennsylvania on January 4, 1999. On March 9, 1999, the federal district court dismissed Appellant's petition based on its belief that Appellant failed to exhaust his state court remedies. On April 12, 1999, the federal district court granted Appellant's motion for a certificate of appealability. That matter was pending before the United States Court of Appeals for the Third Circuit at the time the parties submitted their briefs to this Court in the case *sub judice.*

4. The operative provision provides in full:

(b) **Time for filing petition.—**
(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date that judgment becomes final, unless the petition alleges and the petitioner proves that:
(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

of direct review by this Court or the United States Supreme Court, or at the expiration of the time for seeking such review. 42 Pa.C.S.A. § 9545(b)(3).

Moreover, the 1995 amendments afford three narrow exceptions to the one-year time limitation for seeking PCRA relief. One of the exceptions provides that a party is excused from the general one-year filing requirement of the PCRA if "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S.A. § 9545(b)(1)(ii). This exception has come to be known as the after-discovered evidence exception. *See Commonwealth v. Yarris,* 557 Pa. 12, 731 A.2d 581, 592 (1999) (characterizing 42 Pa.C.S.A. § 9545(b)(ii) as "the after-discovered evidence exception to the timeliness requirement"); *Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638, 643 (1998) (stating that "the exceptions to [PCRA] filing period encompass government misconduct, after-discovered evidence, and constitutional changes"). Furthermore, as a secondary proviso, the amendments mandate that when a petitioner alleges entitlement to an exception to the one-year time limitation, the petition will only be addressed on substantive grounds if it is "filed within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). Thus, a petitioner relying on the after-discovered evidence exception is further required to file his or her PCRA petition

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review to the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

(4) For purposes of this subchapter, "government officials" shall not include defense counsel, whether appointed or retained.

42   Pa.C.S.A. § 9545(b).

within 60 days of the discovery of the new evidence proffered in support of relief.

It is also important to note that the time limitations of the 1995 amendments are jurisdictional. *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 217 (1999); *Yarris*, 731 A.2d at 587. As such, when a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the trial court has no power to address the substantive merits of a petitioner's PCRA claims.

There is no dispute in the present case, nor could there be, that Appellant filed the instant PCRA petition outside the one-year time limitation. By virtue of this Court's direct review decision of December 9, 1993, and Appellant's failure to pursue a Writ of Certiorari to the United States Supreme Court thereafter, Appellant's direct review rights expired sometime in 1994.[5] Thus, Appellant's PCRA petition of February 5, 1999, filed almost five years after final judgment on his direct review, is clearly untimely. Consequently, the PCRA court would have no jurisdiction to entertain Appellant's current PCRA petition unless he can plead and prove, first, that at least one of the limited exceptions to the time bar provided in 42 Pa.C.S.A. § 9545(b)(1) applies, and second, that, in accordance with 42 Pa.C.S.A. § 9545(b)(2), he filed his petition within 60 days of the date that his claims could have been presented. *See Commonwealth v. Beasley*, 559 Pa. 604, 741 A.2d 1258, 1261 (1999) (stating "[t]he statute makes clear that where, as here, the petition is untimely, it is petitioner's burden to plead in the petition and prove that one of the exceptions applies"). In addressing this issue below, the PCRA court concluded that Appellant failed to establish his entitlement to an exception to the one-year time limitation,

---

**5.** A defendant in a capital case has 90 days from the date of this Court's decision to file a Petition for a Writ of Certiorari with the United Stated Supreme Court. *See* U.S. Supreme Court Rule 13.

thus obviating any need for the court to receive evidence on Appellant's substantive PCRA claims.

As he did before the PCRA court, Appellant articulates his argument in terms of the after-discovered evidence exception to the one-year time limitation. This is obviously in recognition of the need to establish one of the exceptions before this Court will have jurisdiction to reach his substantive claims.[6]

**6.** Appellant presents the following issues for our review:

1. Was the petition timely filed under 42 Pa.C.S. § 9545(b) and/or is Appellant entitled to *nunc pro tunc* restoration of his right to raise claims of PCRA counsel's ineffectiveness?

2. Was post-conviction counsel ineffective for failing to raise the claims presented in this petition and/or for failing to adequately investigate, develop, present and litigate those claims? Are all of Appellant's claims are [sic] cognizable on the merits?

3. Was Mr. Taylor's guilty plea and waivers of his rights to present evidence at the degree of guilt hearing, to a jury for the penalty phase proceeding, and to present evidence at the penalty phase proceeding, knowing, voluntary and intelligent? Did trial counsel ineffectively fail to ensure that any waivers by Mr. Taylor were valid, and to protect his right to a jury determination of sentence? Were all prior counsel were [sic] ineffective for failing to raise, investigate, develop and properly litigate these claims?

4. Did Appellant plea [sic] guilty, waive trial rights, and get tried while incompetent? Did the trial court fail to conduct any on-the-record proceedings regarding Appellant's incompetence despite significant indicia that Appellant was incompetent? Was counsel ineffective for failing to investigate, develop, and present evidence of incompetency, and for failing to even present the issue of Appellant's competence for judicial resolution?

5. Is Mr. Taylor entitled to relief from his conviction and death sentence because at the time of his capital proceedings Pennsylvania employed an unconstitutional standard for evaluation of competency and the trial court likely applied this unconstitutional standard in evaluating Mr. Taylor's competency?

6. Was Appellant deprived of the effective assistance of counsel on direct appeal of his convictions and sentences?

7. Is Mr. Taylor entitled to relief from his conviction and sentence because trial counsel was ineffective for failing to investigate, develop and present, during the guilt phase of Mr. Taylor's capital trial, a diminished capacity defense?

8. Is Mr. Taylor entitled to relief from his conviction and sentence because trial counsel was ineffective for failing to investigate, develop and present, during the guilt phase of Mr. Taylor's capital trial, a voluntary intoxication defense?

9. Is Mr. Taylor entitled to relief from his death sentence because counsel was ineffective at the penalty phase for failing to investigate, develop and present mitigating evidence of Mr. Taylor's abusive childhood, mental illness and severe drug addiction?

Appellant's argument on this issue has various dimensions. To begin, Appellant maintains that he has a right to effective assistance of counsel during the post-conviction process. Appellant then makes the layered claim that the attorney who represented him in his first PCRA petition (PCRA counsel) was ineffective for failing to raise numerous issues before both the PCRA court and this Court concerning trial counsel's ineffectiveness. With regard to trial counsel's ineffectiveness, Appellant specifically points to trial counsel's alleged failure to appreciate Appellant's diminished mental state when Appellant directed trial counsel to refrain from presenting mitigating circumstances at the penalty stage of trial. Against this backdrop, Appellant presents numerous aspects of what he considers to be newly discovered evidence.[7] According to Appellant, this evidence, which he believes establishes that he was not mentally competent when he directed trial counsel not to present mitigating circumstances, should have been further explored by PCRA counsel, and therefore, PCRA counsel's failure to do so constituted ineffectiveness. Finally, Appellant adds that he filed the current petition within 60 days of the discovery of the facts upon which his claim is based. Appellant argues that the 60–day proviso is satisfied because he filed his current petition within 60 days of current counsel's receipt of the PCRA file and discovery of the new evidence that highlights PCRA counsel's ineffectiveness.

Appellant's attempt to interweave concepts of ineffective assistance of counsel and after-discovered evidence as a

7. Appellant argues that a "fact" that current counsel discovered in reviewing the PCRA file was that PCRA counsel disregarded the reports of two doctors regarding Appellant's mental health, which reports were prepared prior to Appellant's trial. Appellant asserts that had PCRA counsel more thoroughly examined these reports, and had PCRA counsel had each doctor augment their reports in light of the other doctor's report, PCRA counsel would have come to the realization that Appellant was not competent at trial and that, therefore, trial counsel was ineffective for not overriding Appellant's decision not to present mitigating evidence. In addition, Appellant points to other "facts" allegedly not available to him prior to current counsel's review of the file; namely, PCRA counsel's failure to conduct any interviews with mental health or lay witnesses, the absence of any action based upon the two mental health reports and the dearth of legal research in the PCRA file.

means of establishing jurisdiction is unconvincing. Although Appellant formulates his assertions here in terms of the discovery of new facts not previously known to him, it is readily apparent that Appellant's argument, at its essence, is a claim for ineffective assistance of PCRA counsel layered on top of trial counsel's ineffectiveness. This Court has stated previously that a claim for ineffective assistance of counsel does not save an otherwise untimely petition for review on the merits. *See Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585, 589–90 (2000) (holding that couching argument in terms of ineffectiveness cannot save a petition that does not fall into exception to jurisdictional time bar); *Fahy*, 737 A.2d at 223 (citing *Peterkin* and "reiterat[ing] that a claim for ineffectiveness of counsel does not save an otherwise untimely petition for review on the merits"); *Beasley*, 741 A.2d at 1260 (citing *Peterkin* and *Commonwealth v. Banks*, 556 Pa. 1, 726 A.2d 374 (1999) and stating that "neither the fact that the instant petition is filed in a capital case nor the fact that some of appellant's claims are couched in terms of ineffectiveness, will save this petition from application of section 9545"). Nevertheless, hoping to gain the benefit of the exception, Appellant fashions the argument that the basic facts concerning PCRA counsel's representation, which allegedly highlight that PCRA counsel was ineffective, were not known to Appellant until current counsel reviewed the file. However, subsequent counsel's review of previous counsel's representation and a conclusion that previous counsel was ineffective is not a newly discovered "fact" entitling Appellant to the benefit of the exception for after-discovered evidence. In sum, a conclusion that previous counsel was ineffective is not the type of after-discovered evidence encompassed by the exception.

We addressed a similar argument in our recent decision in *Commonwealth v. Pursell*, 561 Pa. 214, 749 A.2d 911, 915 (2000), and concluded that claims of PCRA counsel's ineffectiveness do not escape the PCRA one-year time limitation merely because they are presented in terms of current counsel's discovery of the "fact" that a previous attorney was ineffective. In *Pursell*, the appellant argued before this Court

in support of his second PCRA petition that because he possessed only a layman's knowledge of the law he could not have been aware of prior counsel's ineffectiveness until his current counsel undertook his representation. Like Appellant here, the appellant in *Pursell* also asserted that he satisfied the 60–day requirement because he filed his second PCRA petition within 60 days of current counsel's receipt of the his file. In examining the application of the after-discovered evidence exception to the facts of the appellant's second PCRA petition in *Pursell*, we concluded that:

> [T]he allegation of ineffectiveness of counsel for failure to put forward available claims does not excuse compliance with the timeliness requirements of the PCRA. Therefore, the 42 Pa.C.S. § 9545(b)(1)(ii) exception does not apply where the petitioner merely alleges that more competent counsel would have presented other claims based on a better evaluation of the facts available to him or her at the time of trial, and we reject [the a]ppellant's contention that the "facts" which form the bases of these claims were not knowable until he was advised of their existence by present counsel.

*Id.* at 916–17 (citation omitted). The rationale of our *Pursell* decision is equally applicable to the present discussion. No matter how craftily Appellant attempts to present this argument, the reality is that current counsel's assessment of PCRA counsel's failure to develop the issue of trial counsel's ineffectiveness is not a newly discovered "fact." Thus, to the extent that Appellant is arguing that PCRA counsel's ineffectiveness was after-discovered "fact," we conclude that such a claim will not establish jurisdiction under 42 Pa.C.S.A. § 9545(b)(1)(ii).

▮ Appellant's argument regarding after-discovered evidence appears to contain another component. Appellant seems to argue that current counsel has uncovered additional, previously unknown facts concerning Appellant's mental fitness at the time of trial, which evidence establishes that Appellant was mentally unfit to instruct his trial counsel not to present mitigating evidence. In support of this argument,

Appellant appends to his brief affidavits from two medical experts who examined him prior to trial. The substance of these affidavits is that the experts' opinions as to Appellant's medical competence at trial would have been different had they been apprised of other information. Appellant also appends to his brief the affidavits of two additional medical experts who examined Appellant for the purpose of the instant PCRA petition. It is the shared opinion of these medical experts that Appellant was not mentally fit to waive his right to present mitigating circumstances at the trial. Appellant attempts to make use of these affidavits to assert that these current opinions are after-discovered evidence allowing him the benefit of the exception.

This Court has held that a medical expert's change of opinion from that given at trial, which is based merely on the examination of additional information that was available at the time the initial opinion was proffered, does not constitute after-discovered evidence. *Commonwealth v. Cross*, 555 Pa. 603, 726 A.2d 333 (1999). Certainly, in keeping with the rationale of *Cross*, a completely new opinion uncovered after trial would also not be recognized as after-discovered evidence. The issue to which this purportedly newly discovered evidence speaks is whether Appellant was mentally fit at the time of trial.[8] All the facts regarding Appellant's mental state, if not known, surely were ascertainable by the exercise of due diligence before Appellant's trial. In consequence, Appellant's contention that the "facts" concerning his mental illness were not known to him until current counsel's discovery

---

**8.** In addressing Appellant's first PCRA petition, this Court opined:

> The [PCRA] court also found that [Appellant] failed to present any evidence that would support a finding that he was at any time incapable of making knowing and intelligent decisions. In this regard, the PCRA court noted that the trial court had required psychological and psychiatric evaluations prior to the entry of [Appellant's] guilty plea, which established that Taylor was able to make rational decisions throughout and was otherwise competent to stand trial.

*Commonwealth v. Gamboa Taylor*, 553 Pa. 144, 718 A.2d 743, 744 (1998). Thus, regardless of Appellant's argument, the issue of whether Appellant was competent at trial has been litigated.

of these new opinions is likewise not a cognizable claim under the narrow exception for after-discovered evidence.

█ In addition, Appellant makes the public policy argument that if this Court refuses to address the substantive issues presented on appeal, this would make this Court's promise of an enforceable right to effective post-conviction counsel illusory.[9]  While we agree that prisoners are entitled to effective assistance of counsel during post-conviction proceedings, and have held so in *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999) and *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998), this does not afford a prisoner the right to bring ongoing PCRA petitions with the hopes of indefinitely forestalling execution.  If we were to accept Appellant's argument here, any subsequent counsel's determination that prior counsel was ineffective would provide a newly discovered "fact" not previously available to a petitioner.  A petitioner would then have 60 days from subsequent counsel's review of the file to present another PCRA petition.  In this scenario, a petitioner would be able to circumvent the one-year time limitation each time another attorney presented a new theory of ineffectiveness of previous counsel.

Clearly, Appellant's theory runs contrary to the purpose of the 1995 amendments.  As this Court has previously commented:

> With the 1995 Amendments to the PCRA, the General Assembly has established a scheme in which PCRA petitions are to be accorded finality.  With certain exceptions, challenges to a conviction must be raised either within one year of final judgment or within one year of the effective date of the act.
>
> . . .
>
> At some point, litigation must end.  The purpose of the law is not to provide convicted criminals with the means to

---

**9.**  Appellant also argues that under this Court's decision in *Commonwealth v. Stock,* 545 Pa. 13, 679 A.2d 760 (1996), his right to appeal his PCRA petition should be restored *nunc pro tunc.*  We find no facts in the present case to support the application of the equitable principles of *Stock.*

escape well-deserved sanctions, but to provide a reasonable opportunity for those who have been wrongly convicted to demonstrate the injustice of their conviction. The current PCRA places time limitations on such claims or error, and in doing so, strikes a reasonable balance between society's need for finality in criminal cases and the convicted person's need to demonstrate that there has been an error in the proceedings that resulted in his conviction.

*Peterkin,* 722 A.2d at 642–43 (footnote omitted). Furthermore, not only would acceptance of Appellant's theory undermine the purpose of the 1995 amendments, it would also render the death penalty a nullity in this Commonwealth. By allowing the filing of serial PCRA petitions on newly discovered ineffectiveness, the death penalty would, in effect, be vitiated. *See id.* at 642 (quoting *Sayers v. Commonwealth,* 88 Pa. 291, 307 (1879) ("If the legislature may fix no limitation whatever upon the issuing of such writs [of error], it is not too much to say that capital punishment cannot be hereafter enforced in Pennsylvania.")). This is clearly not what the authors of the PCRA envisioned when they defined the limited purpose of the PCRA as providing an action "by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S.A § 9542.

In conclusion, we hold that the PCRA court properly determined that Appellant's second PCRA petition was not timely filed.