J-S10008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| FRANCISCO QUERENDONGO | : | |
| Appellant | : | No. 1529 EDA 2018 |

Appeal from the PCRA Order April 27, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0108811-2000

BEFORE:   GANTMAN, P.J.E., STABILE, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                          **FILED MARCH 22, 2019**

Appellant, Francisco Querendongo, *pro se*, appeals from the order of the Court of Common Pleas of Philadelphia County, entered April 27, 2018, that dismissed his third petition filed under the Post Conviction Relief Act (PCRA)[1] without a hearing.  We affirm.

The facts surrounding the crime out of which this matters arises were set forth by Appellant in detail in a videotaped confession and in the course of a pre-trial court-ordered psychiatric examination in 2000.[2]  As the trial court explained:

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] Prior to trial, the parties' counsel agreed that Appellant would submit to a mental health examination, and the psychiatrist's report would be submitted at trial by stipulation.

---

\*   Retired Senior Judge assigned to the Superior Court.

On January 3, 2000, [Appellant] visited his brother, Arturo, at his home, where they drank beer and rum with a group of three other men. At approximately 7 p.m. the men left Arturo's house and went to the bar to play pool. The men stayed at the bar for approximately one hour. Upon leaving the bar, Arturo drove [Appellant] to his home at 2050 East Susquehanna Avenue.

[Appellant] began cooking dinner and approximately one hour later, he heard a knock at the door. As he opened the door, [Appellant] saw Ms. Christine Nash (hereinafter decedent or Ms. Nash) and invited her into the living room. [Appellant] accused Ms. Nash of having stolen his television and play station two weeks prior to that night. She denied any involvement with the missing items and told [Appellant] that she needed money. [Appellant] told Ms. Nash that he would give her twenty dollars if she had sex with him. She agreed and [Appellant] gave her twenty dollars. The two snorted cocaine, went upstairs to the middle bedroom, undressed and began to have sex. Within minutes, Christine Nash changed her mind and wanted [Appellant] to stop. [Appellant] stopped, however, he wanted his twenty dollars returned. Ms. Nash refused and began laughing at [Appellant].

[Appellant] became agitated and angered by her constant mocking and went to his bedroom to retrieve a gun. He returned with a double barrel shotgun and threatened her but she continued to laugh. [Appellant] threw the gun down and grabbed Christine Nash's neck and began to squeeze with both hands. [Appellant] threw Ms. Nash to the floor, pinned her shoulders to the floor with his knees and repeatedly told her "this is so you won't make fun of me and so you won't take me for a fool" as he continued to squeeze her neck. When Ms. Nash was motionless on the floor, [Appellant] decided to dress her and planned to throw her body in the yard of the abandoned house next door to [Appellant's] house. [Appellant] recovered his twenty dollars from Ms. Nash's jacket. While dressing the decedent, [Appellant] was interrupted by a knock at the door. [Appellant] answered the door to see his sister, Rosemary Batista and her children standing on the steps. [Appellant] refused to let his sister into the house and told her to leave because he had "just killed the Hija de la gran puta." Mrs. Batista left while [Appellant] went upstairs into the middle bedroom, looked at the decedent and decided to leave the house. [Appellant] never returned home.

Trial Court Opinion, filed February 12, 2001, at 1-3 (footnotes and citations omitted).

In January 2001, Appellant was convicted, following a bench trial, of first-degree murder, and sentenced to life in prison. This Court affirmed the judgment of sentence, and on January 8, 2003, the Supreme Court of Pennsylvania denied allowance of appeal. ***Commonwealth v. Querendongo***, 806 A.2d 465 (Pa. Super. 2002) (unpublished memorandum), *appeal denied*, 815 A.2d 1041 (Pa. 2003).

On May 26, 2003, Appellant filed his first *pro se* PCRA petition. The PCRA court denied the petition for lack of merit on July 9, 2004. This Court affirmed the decision of the PCRA court on November 21, 2005, and on May 9, 2006, the Supreme Court of Pennsylvania denied allowance of appeal. ***Commonwealth v. Querendongo***, 890 A.2d 1104 (Pa. Super. 2005) (unpublished memorandum), *appeal denied*, 898 A.2d 1070 (Pa. 2006). Appellant filed a second PCRA petition, *pro se*, on September 29, 2015. On June 21, 2016, the PCRA court dismissed the petition as untimely filed. Appellant timely filed a *pro se* notice of appeal, and this Court affirmed. ***Commonwealth v. Querendongo***, 169 A.3d 1219 (Pa. Super. 2017) (unpublished memorandum).

On June 5, 2017, Appellant filed the instant *pro se* PCRA petition, his third. In his petition, Appellant claims that there are substantial questions about his mental state and ability to form the intent to kill necessary to sustain

his first-degree murder conviction. PCRA Petition at 4. Appellant asserts that the facts upon which he asserts his claim are contained in medical records, specifically, a January, 2001 mental health evaluation conducted shortly after he began serving his sentence. He alleges he became aware of the medical records in May, 2017. Appellant was permitted to submit a supplemental petition, to which he attached affidavits from his brother and sister, both of whom testified at his trial, averring that Appellant was intoxicated at the time of the murder and that he had a history of mental illness.

The issue of Appellant's mental health and his capacity to form a specific intent to kill was thoroughly litigated at his 2000 trial and in his direct appeal. In his pre-trial report, the court-appointed psychiatrist indicated that Appellant had an impulsive personality related to an abusive upbringing and that this impulsive behavior was more likely to occur when he was intoxicated with drugs or drinking. Mental Health Evaluation, 12/21/2000, at 3. He further stated, based on Appellant's report to him that he had been drinking heavily and using cocaine just before the incident, that "alcohol and cocaine played a substantial role in diminishing [Appellant's] capacity to control his rage." *Id.* The psychiatrist opined, predicated on corroboration of events as described by Appellant, that Appellant was not capable of formulating a specific intent to kill at the time of the crime; however, he further stated, "[t]he main element that I find against a possible diminished capacity defense is [Appellant's]

ability to remember and vividly describe the dynamics of the crime. *Id*. at 3-4.

In his statement of matters complained of on appeal in his direct appeal, Appellant asserted, *inter alia*, that his "mental history and the court's mental health examination confirmed [Appellant] was laboring under mental defects sufficient to reduce the grading of the offense to third degree murder or manslaughter[.]" Concise Statement of Matters Complained of on Appeal, filed February 21, 2000. In its 1925(a) opinion in the direct appeal, the trial court provided a thorough evaluation of the evidence adduced at trial and explained its rejection of Appellant's diminished capacity claims.

> The evidence reveals that [Appellant] used deadly force on a vital part of the victim's body, causing her death. The evidence that deadly force was used on a vital part of the body is sufficient to establish the premeditation necessary to form the specific intent to support murder in the first degree. [Appellant] further maintains that his drug and alcohol use on the day in question mitigated the case to no higher than third degree murder or involuntary manslaughter because he was incapable of forming the requisite specific intent to kill necessary to find first degree murder. This argument is also unsustainable…
>
> [Appellant] did not prove that alcohol overwhelmed him to the point where he lost his faculties. To the contrary, [Appellant's] actions show that he was sufficiently in control of his faculties to dress the decedent, remove the twenty dollars from her jacket and devise a plan to get rid of her body. Additionally, other evidence makes clear that [Appellant] was thinking and behaving coherently during the entire incident…
>
> There is no credible evidence in the record to support the conclusion that the defendant was overwhelmed or overpowered by drug and alcohol abuse to such an extent as to be incapable of forming the specific intent to murder…

In the instant case, the court ordered a mental health evaluation which was prepared by Pietro Miazzo, M.D., a board certified forensic psychiatrist, who concluded that [Appellant's] ability to remember and vividly describe the crime in great detail mitigated against any finding of diminished capacity. The trial court further notes that [Appellant's] videotape confession makes abundantly clear that [Appellant] was fully aware of his acts and lacked any remorse. Moreover, [Appellant's] action at the time of the murder further prove that he was not laboring under any mental illness sufficient to deprive him of his ability to appreciate the wrongfulness of his acts or to conform his conduct to the requirements of law.

Trial Court Opinion, filed February 12, 2001, at 6-8, 10 (citations omitted).

On appeal, this Court adopted the trial court's analysis and conclusion. *Commonwealth v. Querendongo*, No. 576 EDA 2001, unpublished memorandum at 1 (Pa. Super. filed June 24, 2002). In his first PCRA petition, Appellant again raised, unsuccessfully, the issue of diminished capacity.[3]

In his third PCRA petition, Appellant asserts that due to his mental incompetence, he could not have discovered the evidence that he lacked the specific intent to kill his victim sooner, and would not have learned it at all,

_____

[3] Appellant also filed, on July 5, 2006, a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging, *inter alia*, that evidence of his intoxication and extensive mental history warranted conviction for manslaughter, not first-degree murder. The United States District Court denied the petition, quoting extensively from the trial court's 1925(a) opinion, and concluded that the evidence was sufficient to find the killing of Ms. Nash intentional and that Appellant knew what he was doing at the time of the crime. *Querendongo v. Tennis*, No. CIV A 06-2925, 2007 WL 2142387, at *8-10 (E.D. Pa. filed July 23, 2007)(Memoradum/Order).

but for assistance he received from family members and others in procuring his medical records. PCRA Petition at 3.

Pursuant to Pa.R.Crim.P. 907, Appellant was served notice of the PCRA court's intention to dismiss his petition ("Rule 907 Notice") on March 26, 2018. He submitted a response to the notice on April 13, 2018, and on April 27, 2018, the PCRA court dismissed his petition as untimely. On May 21, 2018, Appellant filed this timely appeal.[4]

"We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error." ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018); ***Commonwealth v. Andrews***, 158 A.3d 1260, 1263 (Pa. Super. 2017) (citation omitted). The timeliness of a post-conviction petition is jurisdictional. ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment of sentence is final, unless the petition alleges and the petitioner proves one of the three exceptions to the time limitations for filing the petition set forth in section 9545(b) of the statute. ***See*** 42 Pa.C.S. § 9545(b)(1).[5]

---

[4] The PCRA court did not order Appellant to file a Rule 1925(b) concise statement of matters complained of on appeal. The PCRA Court entered its opinion on July 30, 2018.

[5] The three exceptions to the timeliness requirements are:

A petition attempting to invoke these exceptions "shall be filed within 60 days of the date the claim could have been presented." *Id*. § 9545(b)(2);[6] *see Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 783 (Pa. 2000). In the current appeal, the PCRA court concluded that it lacked jurisdiction over Appellant's third PCRA petition, because the petition was untimely and failed to satisfy an exception to the PCRA's time bar. PCRA Court Opinion, filed July 30, 2018, at 5.

This Court affirmed Appellant's judgment of sentence on June 24, 2002, and on January 8, 2003, the Supreme Court of Pennsylvania denied allowance

_____

(i) The failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) The facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) The right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

[6] Section 3 of Act 2018, Oct. 24, P.L. 894, No. 146, changed the timeframe of 42 Pa.C.S. § 9545(b)(2) from 60 days to one year. The change was effective on December 24, 2018, and applied retroactively to claims arising on December 4, 2017, or thereafter. Appellant's third PCRA petition was filed on June 5, 2017. Thus, the expansion of time to file a claim to one year does not apply to the instant petition.

of appeal.  His judgment of sentence therefore became final for PCRA purposes on April 8, 2003, ninety days after the Pennsylvania Supreme Court denied *allocator* and the time for filing a petition for writ of *certiorari* with the United States Supreme Court expired.  **See** 42 Pa.C.S. § 9545(b)(3); U.S. Sup. Ct. R. 13.   His current petition, filed on June 5, 2017, was therefore untimely by approximately 14 years, unless Appellant satisfied one of the three exceptions in § 9545(b) and filed his PCRA within 60 days of the date that he could have first raised the claim in question.

Appellant invokes the timeliness exception set forth in Section 9545(b)(2)(ii), which requires that he demonstrate (a) that he did not know the facts upon which he based his position, and (b) that he could not have learned those facts earlier by the exercise of due diligence.  **Commonwealth v. Fennell**, 180 A.3d 778, 782 (Pa. Super. 2018) (*en banc*).

To satisfy the first prong of Section 9545(b)(2)(ii), a petition must plead and prove that the facts upon which the claim is predicated were unknown; the timeliness exception cannot be satisfied by merely offering a "newly willing source for previously known facts."  **Commonwealth v. Marshall**, 947 A.2d 714, 722 (Pa. 2008) (claims did not fall under exception to the timeliness requirements of the PCRA where appellant merely offered another source for claims of discrimination that he leveled previously); **Commonwealth v. Lambert**, 57 A.3d 645, 648-49 (Pa. Super. 2012) (witness' affidavit alleging prosecutor's corruption was not newly-discovered evidence sufficient to qualify appellant for exemption where claims of prosecutorial misconduct had

been alleged in every appeal and post-conviction petition since conviction). The record amply demonstrates Appellant's knowledge of his defense of possible diminished capacity and litigation of this issue at trial, on appeal, and in his first PCRA petition. We find that the evaluation and affidavits he presents do not constitute more than new sources for facts of which he was already aware.

Furthermore, assuming *arguendo* that Appellant had established that the requisite facts upon which his claim is predicated were unknown to him, he would still be required to establish that he could not have ascertained such facts by the exercise of due diligence. ***See Commonwealth v. Breakiron***, 781 A.2d 94, 98 (Pa. 2001) (petitioner must explain why he could not have obtained the new fact(s) earlier with the exercise of due diligence); ***Commonwealth v. Monaco***, 996 A.2d 1076-1080 (Pa. Super. 2010), *appeal denied*, 20 A.3d 1210 (Pa. 2011) (appellant had to demonstrate he exercised due diligence in learning the purported "newly discovered" fact of his PTSD).

The mental health evaluation on which the PCRA petition is based here dates from 2001. It was therefore capable of being obtained in 2001, 16 years before the PCRA petition was filed. Appellant argues that under our Supreme Court's decision in ***Commonwealth v. Cruz***, 852 A.2d 288 (Pa. 2004), his 2001 medical records were unascertainable until 2017, when he filed his petition, because he suffered from, and continues to suffer from, mental illness that precluded him from obtaining such records sooner. Appellant's reliance on ***Cruz*** is misplaced. In that case, the appellant had suffered a

severe brain injury from a self-inflicted gunshot wound prior to his entry of a *nolo contendere* plea to second-degree murder.  The Supreme Court vacated and remanded to the PCRA court for a limited hearing wherein the appellant could attempt to prove:

(1)    that he was and remained incompetent throughout the period during which his right to file a PCRA petition lapsed; and

(2)    that his current petition was timely filed within 60 days of his becoming sufficiently competent to ascertain the facts upon which his underlying claims are predicated.

*Id*. at 288.  The ***Cruz*** Court was satisfied that the effects of the gunshot wound, as evidenced by plea counsel's statement at the plea hearing that appellant was "lobotomized" and unable to discuss the fact of the case sensibly, mitigated against any concern that his belated claim of incompetence was fraudulent.  ***Id.*** at 296.  This Court has previously summarized the Supreme Court's holding in ***Cruz*** as follows:

The petitioner entered a plea…because according to his defense counsel he could not "discuss the facts of [his] case in any sort of sensible way," as a result of the injuries resulting from his suicide attempt.  Despite the petitioner's condition, defense counsel did not claim incompetence, and no determination regarding the petitioner's competency was made.  After nearly six years had passed, the petitioner filed a *pro se* PCRA petition, essentially alleging that he had only recently recovered from his self-inflicted gunshot wound to the degree of mental competency required to know and understand the facts of his case.  Therefore, the petitioner argued that he could submit his first PCRA petition only recently.  The court held, and the Superior Court affirmed, that the petitioner's case did not qualify under the after-discovered evidence exception to the time bar of the PCRA.

On appeal, the Supreme Court noted that there had not been any determination that the petitioner was incompetent or that he regained competency. Additionally, the Supreme Court noted that in the petitioner's case, it was indisputable that petitioner had sustained a serious brain injury that impaired his brain function, and that it takes time for such an injury to heal. The Court further stated that the record contained nothing to sufficiently and definitively establish if and when the petitioner had passed from incompetence to competence, and that the petitioner had failed to prove that he was incompetent at the pertinent times, or that he had brought his claims during the sixty day window provided by the after-discovered evidence exception. The Court held that given the language of the exception coupled with the unique circumstances of the petitioner's case, the petitioner should be provided the opportunity to prove that he was incompetent at the relevant times, and that his incompetence qualifies under the after-discovered evidence exception.

***Commonwealth v. Liebensperger***, 904 A.2d 40, 46-47 (Pa. Super. 2006) (citations to ***Cruz*** omitted). The ***Liebensperger*** Court held that ***Cruz*** did not apply where the PCRA petitioner suffered from some mental conditions, including mild mental retardation, but did not have a brain injury, and that he was capable of cooperating in his own defense. 904 A.2d at 46.

Here, Appellant asserts generally that he has always been mentally ill, and points specifically to his "below average intelligence, interpretation problems, memory problems, anxiety, irritability, poor attention span, and poor insight."[7] Appellant's Brief at 13. These conditions, even if accepted as

_____

[7] In his pre-trial report, the court-ordered psychiatrist offered his evaluation of Appellant's mental status:

[Appellant] is a cooperative, somewhat disheveled Hispanic male. His speech is coherent and logical, but he speaks only Spanish and

- 12 -

true, do not constitute incompetency sufficient to prevent Appellant from the exercise of due diligence.

> Only under a very limited circumstance has the Supreme Court ever allowed a form of mental illness or incompetence to excuse an otherwise untimely PCRA petition. Thus, the general rule remains that mental illness or psychological condition, absent more, will not serve as an exception to the PCRA's jurisdictional time requirements.

**Monaco**, 996 A.2d at 1080-81 (citations omitted.)

The PCRA court held that Appellant "has failed to demonstrate that his mental health history rose, at any point, to the level of incompetence," and further that Appellant's own averments contradict his purported incompetence. PRCA Court Opinion, July 30, 2018, at 4. We agree. Appellant has actively pursued his avenues of relief over a nearly 18-year period, and the fact that he has sought assistance in recent years from family members and "jailhouse lawyers" does not establish the degree of incompetency recognized in **Cruz**. Moreover, Appellant has not alleged a point in time at which he passed from incompetence to the degree of competence required to file a PCRA petition. In fact, he still contends that he continues to be mentally incompetent, despite his multiple, coherent *pro se* filings. He cannot therefore

---

the interview is done in Spanish. No psychotic symptoms are noted or reported and no suicidal ideation is reported. His affect is appropriate in range and quality. He is alert, oriented, but his fund of information is poor while his long and short-term memory are generally fair. He was unable to interpret a simple proverb.

Mental Health Evaluation, 12/21/2000, at 3.

establish that he only became able to obtain the 2001 mental health evaluation less than 60 days before he filed the PCRA petition in 2017.

Appellant has failed to prove an exception to the PCRA's timeliness provision, and the PCRA court correctly dismissed his petition as untimely.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/19