J-A26033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MATTHEW TIMOTHY NORRIS | |
| Appellant | No. 101 MDA 2015 |

Appeal from the PCRA Order of December 23, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No.: CP-21-CR-0001592-2000

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED DECEMBER 07, 2015**

Matthew Timothy Norris appeals the December 23, 2014 order dismissing his third petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, as untimely.  We affirm.

On May 12, 2001, a jury convicted Norris of, *inter alia*, first-degree murder.[1]  The PCRA court aptly relates the events underlying Norris' conviction:

> The Commonwealth's case consisted of both eyewitness testimony and circumstantial evidence.  The eyewitness testimony came from Dontae Chambers.  He testified that he, Norris, and Emmett Lockhart had planned to rob Sydney Bull of drugs and money.  The three of them were in a vehicle which Bull, carrying a duffel bag, voluntarily entered.

_____

[*]    Retired Senior Judge assigned to the Superior Court.

[1]    18 Pa.C.S. § 2502(a).

Norris gave directions as Lockhart drove them into the mountains. At some point, Norris produced a pistol[-]grip shotgun which he held on Bull for the remainder of the trip. They eventually reached a place along a mountain road where they parked in a pull-off area.

They marched Bull at gunpoint 20 to 30 yards into the woods. When they came to a clearing, Bull and Lockhart began to scuffle. Norris shoved the shotgun into Bull's face and he froze. The barrel of the shotgun was only 2 or 3 feet from his face as he pleaded for his life. Then "from out of the blue, out of nowhere, [Norris] shot [Bull]."

Bull fell onto his back. Norris went through his duffel bag and began digging through his front pockets. Lockhart had brought along a gas can and began pouring gasoline onto the body. Norris threw lit matches onto the victim's chest and the fire spread to his head and down to his feet. Lockhart then set the gas can on fire about 20 feet from Bull's head.

PCRA Court Opinion ("P.C.O."), 4/27/2015, at 1-2 (minor modifications for clarity).

After Norris was convicted, a separate penalty phase trial was held to determine whether Norris should be sentenced to death. On June 14, 2001, the trial court entered an order declaring a mistrial in Norris' penalty-phase proceedings because the jury was deadlocked, and noted that the court would enter a sentence of life in prison without parole. On June 20, 2001, the trial court formally entered Norris' judgment of sentence. After lengthy post-trial proceedings, Norris' timely-filed post-sentence motions were denied on November 16, 2001.[2] On December 10, 2001, Norris timely

_____

[2] Had the post-sentence motions as originally filed been the ultimate subject of the ruling, they would have been deemed denied in October of
*(Footnote Continued Next Page)*

appealed his judgment of sentence to this Court. We affirmed his judgment of sentence on October 7, 2003. Norris sought permission for allowance of appeal from our Supreme Court, which denied his petition on August 17, 2004. Norris since has filed two petitions pursuant to the PCRA, both of which have been denied.

Norris filed the instant, serial *pro se* PCRA petition on January 2, 2014. The PCRA court appointed counsel, and, during the pendency of the last of several extensions that the PCRA court granted Norris to file an amended PCRA petition, on October 8, 2014, the Commonwealth filed a motion to dismiss Norris' petition. The PCRA court directed Norris to file a brief in opposition to the Commonwealth's motion, and, after a hearing, dismissed Norris' PCRA petition as untimely on December 23, 2014. On January 13, 2015, Norris timely filed the instant appeal. On January 28, 2015, the PCRA court ordered Norris to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Norris timely filed his concise statement on February 13, 2015, and the PCRA court entered the above-excerpted Rule 1925(a) opinion on April 27, 2015, ripening this case for our review.

*(Footnote Continued)* ―――――――――――――――――――

2001 pursuant to Pa.R.Crim.P. 720(B)(3)(a), which provides that, in the absence of a trial court ruling, post-sentence motions are denied by operation of law 120 days after they are filed. However, during post-trial proceedings, numerous continuances were granted and Norris' post-sentence motions were not submitted in full until he filed supplemental post-sentence motions by leave of court on October 12, 2001.

Norris raises the following issues for our consideration:

1.    Whether the PCRA court erred as a matter of law and/or abused its discretion in dismissing [Norris'] PCRA petition as untimely?

2.    Whether the PCRA court erred as a matter of law and/or abused its discretion in dismissing [Norris'] PCRA petition alleging after-discovered evidence on the basis of finding the after-discovered witness not credible?

Brief for Norris at 4.

Well-established principles govern our review of an order denying post-conviction relief:

Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error.  This court grants great deference to the findings of the PCRA court if the record contains any support for those findings.  Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations.

*Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010) (citations omitted).

It is well-established that the PCRA time limits are jurisdictional, and are meant to be both mandatory and applied strictly by the courts to all PCRA petitions, regardless of the potential merit of the claims asserted. *Commonwealth v. Murray*, 753 A.2d 201, 202-03 (Pa. 2000); *Commonwealth v. Leggett*, 16 A.3d 1144, 1145 (Pa. Super. 2011).  "[N]o court may properly disregard or alter [these filing requirements] in order to reach the merits of the claims raised in a PCRA petition that is filed in an

untimely manner." ***Murray***, 753 A.2d at 203; ***see Commonwealth v. Gamboa-Taylor***, 753 A.2d 780, 783 (Pa. 2000).

Despite facial untimeliness, a tardy PCRA petition nonetheless will be considered timely if (but only if) the petitioner pleads and proves one of the three exceptions to the one-year time limit enumerated in subsection 9545(b) of the PCRA, which provides as follows:

(1)   Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i)      the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)      the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)      the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b).

A judgment of sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time

for seeking the review." 42 Pa.C.S. § 9545(b)(3). Norris' judgment of sentence became final on November 15, 2004.[3] Thus, the deadline for Norris to file a timely PCRA petition was November 15, 2005. Norris filed the instant serial PCRA petition on January 2, 2014. Thus, Norris' instant petition on its face is untimely under the PCRA.

Norris does not dispute this fact. Instead, he invokes the newly-discovered fact exception to the PCRA's time limit set forth in subsection 9545(b)(1)(ii), contending that the new facts in question were unknown to him at the time of trial; that he could not have ascertained them before he received the purportedly new witness' affidavit in December 2013; and that he filed the instant PCRA petition within sixty days of when he received that affidavit.

The newly-discovered fact in question is embodied in a sworn affidavit offered by Michelle Greer. At the time of the murder in question, Greer was married to Joseph Brenize. In her affidavit and in her PCRA hearing testimony, she asserted that, on the night of the murder, she and Brenize (collectively, "the Brenizes") hosted a two-month wedding "anniversary" party, and that she remembers that Chambers was present at the party and

_____

[3] The Pennsylvania Supreme Court denied Norris' petition for allowance of appeal on August 17, 2004. As of that date, he had ninety days to seek a writ of *certiorari* from the United States Supreme Court, which deadline fell on November 15, 2004. **See** U.S. Sup. Ct. R. 13. Because he did not do so, his judgment of sentence became final on that date.

- 6 -

did not leave until 11 P.M. or later. Consequently, he could not have been at the scene of the murder. Were this the case, it would support Chambers' recantation testimony during Norris' trial to the effect that he was not present at the scene of the murder (and thus, knew nothing of who was there or what they did), and that the elaborate, self-incriminating, contrary account that he provided to investigators (and again during his direct examination at trial), which evidently was entirely consistent with the physical evidence, was in fact a fabrication that he offered in an effort to appease investigators. In her affidavit, Greer also asserts that shortly after the events in question, and before any of the defendants' trials, she enlisted in the United States Air Force and sought postings far away from Shippensburg, eventually arriving at Panama City, Florida, where she still lived at the time of the PCRA hearing.

Greer attests that she was not contacted by investigators or attorneys associated with either of the trials spawned by the murder of Sydney Bull. Indeed, having already left Shippensburg while the investigation of Bull's murder was ongoing, she claims to have been wholly unaware of any trial. Instead, she claims that it was only in 2013, when she was contacted via Facebook by Norris' sister, that she heard of Norris', Lockhart's, and Chambers', convictions for Bull's murder.[4] Norris' sister allegedly asked

_____

[4] Somewhat supporting the PCRA court's determination that Greer's testimony at the PCRA hearing was less than convincing, her attempt during

*(Footnote Continued Next Page)*

- 7 -

whether Greer would be willing to provide Norris with a full accounting of Greer's recollections from the night of the murder. She agreed to speak with Norris, who ultimately convinced her to prepare the notarized statement. She did so and had it notarized on December 13, 2013.[5]

Norris alleges that he could not have learned of Greer's account any sooner than he did, because only upon his receipt of Greer's affidavit with

_(Footnote Continued)_ ─────────────────

cross-examination to establish the chronology regarding her establishment of a Facebook account, Norris' sister's unsolicited effort to reach out to Greer through that account, and the events that followed, including when she first contacted Norris in prison to discuss with him her recollection of the evening of April 24, 2000, revealed several inconsistencies. For example, Greer testified that she established the account a year or two before Norris contacted her. However, defense counsel presented her with a document providing the "born-on date" for Norris' account, which indicated that she had established it in September 30, 2013. Her notarized affidavit was dated December 13, 2013, approximately six weeks later. However, she also testified that, before preparing a notarized affidavit, she had discussions with Norris and, on at least two occasions, sent him versions of her affidavit that were **not** notarized, each of which was returned to her because she failed to address the post in compliance with prison requirements—and only thereafter did she have her affidavit notarized and successfully transmit it to Norris. Notes of PCRA Testimony, 12/18/2014, at 30-35. Although the matter is not developed at length by either party or the PCRA court, this timeline, as related by Greer, simply does not appear to add up.

[5] Although it mattered more to the PCRA court's merits review—and specifically its assessment of Greer's credibility—than it does to our jurisdictional ruling, we find it noteworthy that it emerged at the PCRA hearing that during or in the wake of Greer's initial conversations with Norris, she and Norris became involved in something resembling a romantic relationship. **See** Notes of PCRA Testimony, 12/18/2014, at 35-36. The trial court treated this as a fact that undermined Greer's credibility. **See** P.C.O. at 4 ("When [Greer] conceded on cross-examination that she was currently, and had been for some time, in a romantic relationship with Norris, her credibility was destroyed.").

her account of the events of April 24, 2000, could he have understood the substance and exculpatory value of her potential testimony. *See* Brief for Norris at 7, 10. He filed the instant PCRA petition on January 2, 2014, well within sixty days following his receipt of her December 2013 affidavit.[6]

To gain the benefit of the newly-discovered fact exception, the petitioner must prove that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). Additionally, the petitioner must demonstrate that the petition has been filed within sixty days after the date the claim could have been presented, *i.e.*, when he learned of the evidence in question. *See* 42 Pa.C.S. § 9545(b)(2).

The newly-discovered fact timeliness exception is distinct from the after-discovered evidence basis for relief stated in 42 Pa.C.S. § 9543. To be eligible for relief under section 9543, the "petitioner must plead and prove by a preponderance of the evidence . . . [t]hat the conviction or sentence resulted from . . . the unavailability at the time of trial of exculpatory

---

[6] Implicit in the evidence adduced at the hearing is that some substantial period of time separated Greer's initial discussions with Norris, during which, we can assume, some aspects of what Greer ultimately included in her affidavit were made known to Norris. Thus, it is at least plausible that he filed his PCRA petition more than sixty days after he first learned, *e.g.*, that Greer was prepared to state under oath that Chambers was at her party on the night of the murder. However, because the PCRA court did not so find, we assume without deciding that Norris satisfied subsection 9545(b)(2)'s sixty-day requirement.

evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543. Conversely, the newly-discovered fact exception set forth in subsection 9545(b)(1)(ii) pertains solely to timeliness for purposes of jurisdictional analysis, and it "does not require any merits analysis of the underlying claim. Rather, the exception merely requires that the 'facts' upon which such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence." ***Commonwealth v. Bennett***, 930 A.2d 1264, 1271 (Pa. 2007) (quotations and citations omitted). "A petitioner must clear the first hurdle, the exception to the PCRA time limit . . ., in order to obtain review on the merits" under section 9543. ***Commonwealth v. Soto***, 983 A.2d 212, 215 n.6 (Pa. Super. 2009).

In finding that Norris failed to plead and prove the newly-discovered fact exception, the PCRA court explained as follows:

> We were satisfied that the instant petition was untimely because [Norton] had knowledge of Greer's party years before he filed this petition. Although Greer had never testified previously, several other people at the party were interviewed as part of the murder investigation. ***See*** Notes of PCRA Testimony ("N.P.T."), 12/18/2014, at 57-58. At Chambers' murder trial, which occurred seven months after [Norris'] trial, people who had attended the party did testify. ***Id.*** at 63. Not only had [Norris'] parents been present every day of Chambers' trial, but [Norris] had actual knowledge of the party and had discussed it with at least one of the attendees before Chambers' trial. ***Id.*** at 56, 62, 64.
>
> We were also satisfied that the exercise of due diligence would have led [Norris] to Greer long before she [sent Norris] her affidavit on [December 13, 2013]. ***Id.*** at 31. Although Greer enlisted in the Air Force in July 2000, her father, sister and

- 10 -

> grandmother remained in this area. *Id.* at 14-15. Greer also visited the area twice during her enlistment, for "4 to 5 days each time." *Id.* at 16.

P.C.O. at 3 (citations moved from footnotes into text). Thus, although the PCRA court went on to address and reject the merits of Norris' petition under the test applicable to after-discovered evidence, *see* P.C.O. at 3-5, it nonetheless found that it lacked jurisdiction to do so, and we agree.

Notably, Norris' argument rebuts only the latter point—that Greer would have been impossible for him to reach, even upon a duly diligent effort to do so, as a consequence of her active duty in the air force. This bald assertion, however, is belied by both common sense and the record. Steven Junkin, at the time of the PCRA hearing the Chief of Police for Hampden Township Police Department, and a corporal in the Pennsylvania State Police during the investigation of Bull's murder, testified that, in connection with other investigations, he had located active-duty military personnel with little difficulty. N.P.T. at 56-57. When asked to elaborate, he explained how one might locate active military personnel:

> First is you could contact family members and ask them where the person is located. You could go to a recruiting station and ask them to locate. In the area here, there's the Army War College, there's the Navy Depot, there's various places that you could go and reach out and ask them.

*Id.* Moreover, Greer served in the Air Force for six years before her honorable discharge. Consequently, even if she had not been available during her service, she was a civilian who could have been located for the

- 11 -

latter half of the time between Lockhart's trial and the date of filing for the instant PCRA petition.

In any event, neither Lockhart nor she provides a concrete basis beyond conclusory assertions upon which to conclude that Greer could not have been located, had Norris or his counsel endeavored to do so, or that she would not have been amenable to process or otherwise available at the time of trial or during the years that separated her service from when she furnished the affidavit upon which Norris' petition relies. Thus, this argument is not responsive insofar as Norris' conclusory assertion that she would not have been accessible to him until after her discharge satisfies, at most, his burden to **plead** that fact. It did not obligate the PCRA court to conclude that he had **proved** it on the record developed in these proceedings.

More importantly, though, Norris does not even attempt to rebut the PCRA court's strongest bases for finding Norris' petition untimely, *i.e.*, that the Greer party was raised by several people during the investigatory phase of this case; that several of them testified at Chambers' trial regarding the party; and that Norris' parents attended every day of the Chambers trial. Because we find no basis upon which to conclude that Greer could not have been found by someone interested in finding her years before Norris' sister initiated contact with Greer and put her in touch with Norris, Norris' lack of argument disputing the PCRA court's identification of the various ways in which Norris knew or should have known of the party and discerned the

value of seeking out attendees for further investigation years before Greer surfaced effectively waives any intended challenge to that critical aspect of the PCRA court's reasoning. Consequently, we must conclude that the record supported the PCRA court's determination that Norris did not plead and prove that the circumstances of this case warranted application of the newly-discovered fact exception to the PCRA's time limit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2015