J-S37020-16

2016 PA Super 117

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LAKISHA MARIE WARD-GREEN, | |
| Appellee | No. 1337 WDA 2015 |

Appeal from the PCRA Order August 26, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009803-2011

BEFORE:  GANTMAN, P.J., SHOGAN and LAZARUS, JJ.

OPINION BY SHOGAN, J.:                                          **FILED JUNE 10, 2016**

The Commonwealth of Pennsylvania appeals from the order granting post-conviction relief to Lakisha Marie Ward-Green.[1]  We reverse.

Pursuant to a stipulation,[2] the affidavit of probable cause provides the factual basis for this case:

_____

[1]  Ms. Ward-Green testified that her probation would end in January of 2016. N.T., 8/26/15, at 77.  To be eligible for post-conviction relief, a PCRA petitioner must establish that she "has been convicted of a crime under the laws of this Commonwealth and **is at the time relief is granted**: (i) **currently serving a sentence of** imprisonment, **probation** or parole for the crime[.]"  42 Pa.C.S. § 9543(a)(1)(i) (emphases supplied).  Here, the PCRA court granted Appellee relief while she was still on probation.  Order, 8/26/15.  Moreover, this is a timely Commonwealth appeal from the final order granting Appellee collateral relief.  Thus, we have jurisdiction to entertain this appeal.

[2]  N.T., 8/26/15, at 85.

On 09-03-2010 at approximately 1512 hours Penn Hills Police, Fire, and EMS responded to a traffic collision that occurred on Stotler Road. . . . It was reported that the crash involved a school bus and a passenger vehicle. Your affiant was advised by the first officer on the scene that there was a serious injury and medics were requested to expedite.

Upon arrival your affiant observed Penn Hills School bus #326, and a red Chevrolet Cobalt were involved in this crash and were at final rest. Your affiant observed tire marks from the Chevrolet leading to the area of impact. The tire marks showed that the Chevrolet was traveling down (south) Stotler Road, veered to the right, left the roadway, struck a utility pole, traveled backwards off the utility pole and struck the school bus as it was traveling up (north) on Stotler Road. The Chevrolet sustained severe front damage and moderate left rear damage. The school bus sustained minor to moderate left front and left side damage.

The front passenger of the Chevrolet, Robert Chambers, was being attended to by Medics and was transported to UPMC Presbyterian. Your affiant was later advised that Robert Chambers was pronounced deceased at the hospital. On [September] 4, 2010, an autopsy was performed on Robert Chambers by Dr. Baiyang Xu of the Allegheny County Medical Examiner's Office. Dr. Xu opined that Robert Chambers died as a result of a cervical spine fracture due to blunt force trauma of the head, sustained as a passenger in a motor vehicle accident.

Your affiant spoke with the operator of the Chevrolet. She was visibly upset and crying. She was also complaining of pain in her chest. This officer obtained her identity as the defendant, Lakisha Ward-Green. The defendant stated that she was traveling down Stotler Road when a vehicle pulled out in front of her, she braked hard, swerved right and struck the pole. The defendant stated that she just picked [Robert Chambers up] from the high school and was taking him home. The defendant stated that she didn't know how fast she was traveling.

The operator of the school bus, Ms. Debra Casale, stated that she was traveling up Stotler Road and observed a red vehicle traveling down Stotler Road at a high rate of speed. The bus operator stated that another vehicle pulled out from her right side of the roadway, crossed in front of her and traveled down Stotler Road. The bus operator stated that the red vehicle

avoided striking this vehicle, went to its right up the hillside, hit a pole, and then struck her bus.

The operator of the vehicle that pulled out, Mr. Edward Reily, stated that he was parked on the east bound side of the roadway pointing south. This operator stated that when he went to pull out he observed a red vehicle traveling down Stotler Road but believed that it was far enough away that he could pull out safely and did so. This operator stated that as he traveled down Stotler Road he passed a school bus traveling up Stotler Road, then heard a crash, looked into his rear view mirror and observed the red vehicle striking a utility pole then the bus. This operator stated that he turned around and returned to the scene to see if he could help in any way.

While on the scene investigating there were numerous individuals out. Many approached your affiant and stated that the red Chevrolet was traveling at a high rate of speed and that concerned them. There were also numerous juveniles along the roadside and in front of the homes along Stotler Road.

Your affiant contacted Allegheny County PD for assistance in conducting a mechanical safety inspection of the Chevrolet vehicle and attempt to down load date from the event data recorder/airbag control module. Your affiant requested and was granted search warrants to conduct said inspections. On 09-29-2010 Detectives Ruckel and Scott of ACPD assisted this officer and conducted said searches. The mechanical inspection found no mechanical problems with the vehicle. The data was down loaded from the event data recorder and showed that the Chevrolet was traveling 75 mph 5 seconds prior to the crash with 71 percent throttle engaged. The posted speed limit on this road way is 35 mph. The Chevrolet was traveling 40 mph over the posted speed limit.

Affidavit of Probable Cause, 6/2/11, at 2–3.

The Commonwealth charged Ms. Ward-Green with homicide by vehicle, involuntary manslaughter, driving vehicle at safe speed, maximum speed limits, and reckless driving. Criminal Information, 8/26/11. On August 8, 2012, pursuant to a negotiated agreement, Ms. Ward-Green pled

guilty to involuntary manslaughter and reckless driving, and the Commonwealth withdrew the remaining charges. On October 23, 2012, the trial court sentenced Ms. Ward-Green to imprisonment for one to two years followed by three years of probation.

Ms. Ward-Green filed a motion for modification or reconsideration of her sentence on October 23, 2012, to which the Commonwealth responded on November 1, 2012. On November 27, 2012, the trial court granted Ms. Ward-Green's motion and permitted her to withdraw her guilty plea. The trial judge then recused himself.

Before a new trial judge, Ms. Ward-Green entered a negotiated plea agreement on January 10, 2013, pursuant to which she pled guilty to involuntary manslaughter and reckless driving, and the Commonwealth withdrew the remaining charges. Ms. Ward-Green was sentenced the same day to imprisonment for four to eight months, followed by three years of probation during which she was to conduct speaking engagements about reckless driving. Because Ms. Ward-Green had 121 days of credit for time served, the trial court ordered her immediately paroled.

Ms. Ward-Green filed a PCRA petition on March 24, 2015, seeking withdrawal of her guilty plea based on a substantive claim of after-discovered evidence that "the crash was due to a mechanical failure in her vehicle caused by a defectively designed ignition switch." Petition, 3/24/16, at ¶ 11. The Commonwealth responded on April 21, 2015, that Ms. Ward-

Green's petition was time-barred. On August 26, 2015, the PCRA court permitted Ms. Ward-Green to file an amended PCRA petition, conducted a hearing, granted Ms. Ward-Green's amended petition, and vacated her guilty plea. This timely appeal by the Commonwealth followed. The Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

The Commonwealth presents the following questions for our consideration:

I.   Whether the PCRA court erred in granting [Ms. Ward-Green] post-conviction relief in the form of withdrawal of her negotiated guilty plea where the PCRA petition was untimely filed?

II.  Whether the PCRA court erred in granting [Ms. Ward-Green] post-conviction relief in the form of withdrawal of her negotiated plea on her after-discovered evidence claim?

Commonwealth's Brief at 4.

> This Court analyzes PCRA appeals "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa.Super.2012). Our "review is limited to the findings of the PCRA court and the evidence of record" and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." *Id.* Similarly, "we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Id.* (citations omitted). "Where the petitioner raises questions of law, our standard of review is de novo and our scope of review is plenary." Finally, we "may affirm a PCRA court's decision on any grounds if the record supports it." *Id.*

*Commonwealth v. Perry*, 128 A.3d 1285, 1289 (Pa. Super. 2015) (quoting

*Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014)).

The Commonwealth first argues that Ms. Ward-Green's PCRA petition was untimely and, therefore, the PCRA court lacked jurisdiction to grant Ms. Ward-Green collateral relief. Commonwealth's Brief at 18. Additionally, the Commonwealth contends that the PCRA court's "analysis of the merits of the underlying after-discovered evidence claim was not appropriate to the PCRA court's determination of whether jurisdiction existed under Section 9545(b)(1)(ii)." *Id.* at 21. We agree on both fronts.

A PCRA petition must be filed within one year of the date that the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). This time requirement is mandatory and jurisdictional in nature, and the court may not ignore it in order to reach the merits of the petition. *Commonwealth v. Cintora*, 69 A.3d 759, 762 (Pa. Super. 2013) (citing *Commonwealth v. Murray*, 753 A.2d 201, 203 (Pa. 2000)). A judgment of sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

Our review of the record reflects that Ms. Ward-Green was sentenced on January 10, 2013, and she did not file a direct appeal from the judgment of sentence. Accordingly, Ms. Ward-Green's judgment of sentence became

final on February 11, 2013,[3] when the time for filing an appeal to this Court expired. *See* 42 Pa.C.S. § 9545(b)(3) (providing that "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."). Therefore, Ms. Ward-Green had to file the current PCRA petition by February 11, 2014, in order for it to be timely. Ms. Ward-Green did not file the instant PCRA petition until March 24, 2015. Thus, Ms. Ward-Green's instant PCRA petition is patently untimely.

However, if a petitioner does not file a timely PCRA petition, her petition may nevertheless be received when the petition alleges, and the petitioner proves, that any of the three limited exceptions to the time for filing the petition, set forth at 42 Pa.C.S. § 9545(b)(1), is met.[4] "That

_____

[3] Technically, Ms. Ward-Green's sentence became final on February 9, 2013; however, that day was a Saturday. *See* 1 Pa.C.S. § 1908 (providing that when a statutory filing deadline falls on a Saturday, Sunday, or holiday, the deadline will be extended to the next business day).

[4] The exceptions to the timeliness requirement are:

> (i)    the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

*(Footnote Continued Next Page)*

- 7 -

burden necessarily entails an acknowledgment by the petitioner that the PCRA petition under review is untimely but that one or more of the exceptions apply." *Commonwealth v. Beasley*, 741 A.2d 1258, 1261 (Pa. 1999). If a petitioner asserts one of these exceptions, she must file her petition within sixty days of the date that the exception could be asserted. 42 Pa.C.S. § 9545(b)(2). In order to be entitled to the exceptions to the PCRA's one-year filing deadline, "the petitioner must plead and prove specific facts that demonstrate [her] claim was raised within the sixty-day time frame" under section 9545(b)(2). *Commonwealth v. Carr*, 768 A.2d 1164, 1167 (Pa. Super. 2001).

Here, Ms. Ward-Green invoked the new-facts exception embodied in section 9545(b)(1)(ii). Amended PCRA Petition, 8/26/15, at ¶¶ 12–14, 16. *See Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1197 (Pa. 2015) (differentiating jurisdictional new-facts exception and substantive after-discovered evidence claim). Ms. Ward-Green averred: "Unbeknownst to Ms. Ward-Green until January 23, 2015, the crash and fatality were both caused by a defectively designed ignition

*(Footnote Continued)* _____

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i), (ii), and (iii).

switch." Amended PCRA Petition, 8/26/15, at ¶ 11. According to Ms. Ward-Green, January 23, 2015, was the date on which she received an expert report "indicating that the crash was due to the failure of a defective ignition switch," and "[s]he filed her original [PCRA] petition within 60 days of receiving that [report]." *Id.* at ¶ 16 (citing Joint Exhibit C: Expert Report of Dr. Alfred Leo Baxley).

In response, the Commonwealth argues that Dr. Alfred Leo Baxley's report "is not an after-discovered fact because it relies upon information that has been available since the entry of [Ms. Ward-Green's] negotiated guilty plea." Commonwealth's Brief at 20. According to the Commonwealth:

> It was known at the time of her negotiated guilty plea that the passenger airbag did not deploy, the ignition switch moved from the run to accessory position two seconds before impact, the power brakes were not activated after two seconds before impact, and at one second before impact the vehicle had zero power.
>
> * * *
>
> All of the information about what occurred to [Ms. Ward-Green's] vehicle was contained in the September 29, 2010 Bosch CDR [crash data retrieval] Report and available at the time [Ms. Ward-Green] entered her negotiated guilty plea on January 10, 2013.

*Id.* at 20, 21 (citing ***Commonwealth v. Gamboa-Taylor***, 753 A.2d 780 (Pa. 2000)). Additionally, the Commonwealth contends:

> Dr. Baxley, like the NHTSC [National Highway Traffic Safety Commission], believed certain GM vehicles had defective ignition switches that resulted in the loss of power and non-deployment of airbags. Based on the Bosch CDR Report for [Ms. Ward-Green's] vehicle, Dr. Baxley certainly could have offered an

opinion in [Ms. Ward-Green's] case prior to the 2014 GM admission that the ignition switch in her vehicle was defective. The possibility of a defective ignition switch cannot be said to have been unknown.

*Id.* at 24 (citation omitted).

This Court recently explained that:

[t]he timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. **Commonwealth v. Bennett**, 593 Pa. 382, 395, 930 A.2d 1264, 1271 (2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. **Commonwealth v. Carr**, 768 A.2d 1164, 1168 (Pa.Super.2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. **Commonwealth v. Breakiron**, 566 Pa. 323, 330–31, 781 A.2d 94, 98 (2001); **Commonwealth v. Monaco**, 996 A.2d 1076, 1080 (Pa.Super.2010), *appeal denied*, 610 Pa. 607, 20 A.3d 1210 (2011). This rule is strictly enforced. **Id.** Additionally, the focus of this exception "is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." **Commonwealth v. Marshall**, 596 Pa. 587, 596, 947 A.2d 714, 720 (2008) (emphasis in original).

**Brown**, 111 A.3d at 176.

Here, the PCRA court rejected the Commonwealth's argument:

The Commonwealth is correct that the loss of power steering, power brakes, airbag failure, and the position of the ignition switch were known prior to the guilty plea. However, the Commonwealth overlooks the fact that these disparate facts were not of consequence until after the congressional hearings in early 2014 and the subsequent GM Recall in February of 2014.

The Commonwealth rests its argument upon the case of *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780 (Pa. 2000). While both cases do involve the usage of expert opinion in an effort to achieve collateral relief, there is a fundamental difference between these cases in the formation and content of

the expert opinions in question. In *Gamboa-Taylor*, defendant Gamboa-Taylor, contended that the expert opinion used to determine his competency for trial was flawed due to the ineffective assistance of his trial counsel. *Id.* at 782. Gamboa-Taylor contended "that the 'facts' which form the bases of these claims were not knowable until he was advised of their existence by present counsel." *Id.* at 786. Gamboa-Taylor attempted to support his argument by providing "affidavits from two medical experts who examined him prior to trial that stated their opinions as to Gamboa-Taylor's medical competence at trial would have been different had they been apprised of other information." *Id.* The Superior Court rejected this reasoning as a basis for relief stating that an "expert's change of opinion from that given at trial, which is based merely on the examination of additional information that was available at the time the initial opinion was proffered, does not constitute after-discovered evidence (citation omitted). Certainly, in keeping with this rational a completely new opinion would also not be recognized as after-discovered evidence." *Id.* The Commonwealth maintains that "an expert opinion cannot be an after-discovered fact, because it relies on facts that have been readily available since the time of the entry of the guilty plea." **Commonwealth's Answer to Post-Conviction Relief Act Petition at p.p. 7.** This [c]ourt reads the ruling of *Gamboa-Taylor* differently, as the Supreme Court went on to state: "the issue to which this purportedly newly-discovered evidence speaks is whether Gamboa-Taylor was mentally fit at the time of trial. All the facts regarding his mental state, if not known, were surely ascertainable by the exercise of due diligence before Gamboa-Taylor's trial." *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 786–787 (Pa. 2000). This [c]ourt believes it is quite clear that in *Gamboa-Taylor*, the Supreme Court is addressing after-discovered evidence within the context of an ineffective assistance of counsel claim. *Id.* at 787. Such a standard and reasoning clearly does not apply in this case. [Ms. Ward-Green] is not asserting that her counsel was ineffective[. I]n fact by not presenting a defense which (at the time) could at best be described as a conspiracy theory, and instead encouraging a negotiated plea, counsel's actions were prudent.

Furthermore, [Ms. Ward-Green's] case is distinguishable from *Gamboa-Taylor* in that there is no argument that the revelation of GM's concealment of this defect was unavailable at the time of [Ms. Ward-Green's guilty plea]. The Commonwealth

- 11 -

argues that the disparate pieces necessary to indicate the presence of the defect were in existence at the time of [Ms. Ward-Green's] plea, and they are correct. There is, however, one important and distinct term which eliminates the congruity between *Gamboa-Taylor* and the instant case: *availability*. It would be a manifest injustice for this [c]ourt to uphold [Ms. Ward-Green's] conviction when it is clear that no agency nor expert in the Nation (and most certainly [Ms. Ward-Green] herself) had the knowledge to convert these disparate facts into a cogent defense. Quite simply, the necessary information to do so was *unavailable*. In fact, by the Commonwealth's logic, a Petitioner who has uncovered exculpatory DNA evidence after a conviction sustained *before* the acceptance of DNA as scientific evidence; [sic] must have their conviction upheld. Because even though DNA was not yet admissible or discovered; [sic] the blood or semen sample that was subsequently tested, was still known of at the time of trial, and thus cannot constitute after-discovered evidence. Such an argument has already been litigated and decided by the Superior Court as long ago as 1992. *Commonwealth v. Brison*, 618 A.2d 420 (Pa. Super. Ct. 1992) (adopting case law of sister jurisdictions regarding DNA as after discovered evidence.) In fact, **42 Pa. C.S.A. § 9543.1** for Post Conviction DNA Testing was enacted in 2002 to address such concerns. This [c]ourt sees no difference between the instant case and this [c]ourt's hypothetical. This case is distinguishable from *Gamboa-Taylor*, because the knowledge upon which Dr. Baxley bases his opinion was unavailable as it was concealed at the time of [the plea]. According to Dr. Baxley, at the time of the accident [neither] he, *nor any other expert*, would have been able to examine the data in this case and come to the conclusion that there was a dangerous defect contained in the ignition switch of [Ms. Ward-Green's] vehicle. **PCRA Hearing at p.p. 59 line 5.** Dr. Baxley stated that "The issue here is also that General Motors had claimed for decades that if there was a power loss during a crash event, the air bags would still deploy. And it was found out after, as part of all the investigations and Congressional Hearings that took place in early 20[14], that was simply not true." **PCRA Hearing p.p. 59 line 15.** The official transcript from the Congressional Hearing on this matter supports Dr. Baxley's claim:

> Senator McCaskill: I want to talk just for a minute about the nature of the defect…Acting Director

- 12 -

> Friedman says that GM's own technical specifications for the Cobalt call for the airbag system to contain an independent power source that is armed and ready to fire for up to 60 seconds after the vehicles [sic] power is cut off. That is in GM's specifications to NHTSA.

***Examining the GM Recall and NHTSA'S Defect Investigation Process: Hearing before the Senate Subcomm. on Consumer Prot., Prod. Safety, and Insurance*, 113th Cong. 33–32 (2014) (Statement of Sen. Claire McCaskill, Chairwoman, Senate Subcomm.).**

Not only was the defect in the ignition switch concealed by General Motors, there were several National Highway Transportation Safety Administration ("NHTSA") reports, which concluded there was **no defect to be found**. NHTSA acknowledged at the 2014 Congressional Hearing that its reports were incorrect when Acting Administrator Hon. David J. Freeman wrote in his statement:

> I want to close on one important note. Our ability to find defects also requires automakers to act in good faith and provide information on time. General Motors has now provided new information definitively linking airbag non-deployment to faulty ignition switches, identifying a part change, and indicating potentially critical supplier conversations on airbags. Had this information been available earlier, it would have likely changed the NHTSA's approach to this issue.

***Examining the GM Recall and NHTSA'S Defect Investigation Process: Hearing before the Senate Subcomm. on Consumer Prot., Prod. Safety, and Ins.*, 113th Cong. 46 (2014) (Statement of Hon. David J. Freeman, Acting Director, NHTSA.).**

It is clear to this court that no expert, nor Ms. Ward-Green, could have known about the significance or effect of the ignition switch being in the accessory position. For an expert to hold otherwise at the time of [the plea] would be disregarded as nothing more than a conspiracy theory, as NHTSA had already issued findings on the issue. *Gamboa-Taylor* presented a case

where the expert was unaware of a readily discoverable fact — which he later maintained would have changed his opinion; and additional experts were called to attest that such a fact would change *any* expert's opinion. In [Ms. Ward-Green's] case, Dr. Baxley is maintaining that *any* expert Ms. Ward-Green would have consulted would have been operating on facts that were simply untrue, concealed by GM, and incorrectly supported by NHTSA. Even the broadest definition of due diligence could not encompass the expectation that [Ms. Ward-Green] was capable of uncovering this defect. Therefore, the Commonwealth's claim is without merit.

PCRA Court Opinion, 12/23/15, at 6–12 (some internal citations omitted).

Upon review, we agree with the PCRA court that the Commonwealth's reliance on *Gamboa-Taylor* is misplaced. Therein, the Pennsylvania Supreme Court rejected the PCRA petitioner's "attempt to interweave concepts of ineffective assistance of counsel and after-discovered evidence as a means of establishing jurisdiction." *Gamboa-Taylor*, 753 A.2d at 785. The Supreme Court opined and concluded as follows:

Although [a]ppellant formulates his assertions here in terms of the discovery of new facts not previously known to him, it is readily apparent that [a]ppellant's argument, at its essence, is a claim for ineffective assistance of PCRA counsel layered on top of trial counsel's ineffectiveness. This Court has stated previously that a claim for ineffective assistance of counsel does not save an otherwise untimely petition for review on the merits.

* * *

In sum, a conclusion that previous counsel was ineffective is not the type of after-discovered evidence encompassed by the exception.

*Id.* In the case before us, Ms. Ward-Green did not raise ineffective assistance of counsel as a new fact that was "unknown to [her] and that

could not have been ascertained through the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). Thus, we distinguish **Gamboa-Taylor**.

Next, we find support in the record for the Commonwealth's argument and the PCRA court's affirmation that the loss of power steering, power brakes, airbag failure, and the position of the ignition switch were facts known to Ms. Ward-Green at the time of her guilty plea. Commonwealth's Brief at 20; PCRA Court Opinion, 12/28/15, at 6, 9. All of these facts were established by the vehicle event data recorder and contained in the resulting Bosch crash data retrieval report ("Bosch report"). N.T., 8/26/15, at 29–36. We also find support in the record for the PCRA court's determination that "[the] disparate facts were not of consequence until after the congressional hearings in early 2014 and the subsequent GM Recall in February of 2014." PCRA Court Opinion, 12/28/15, at 6 (citation omitted). According to Dr. Baxley, he could not have testified at the time of Ms. Ward-Green's plea to a causal connection between the ignition switch and non-deployment of the air bags because GM "had claimed for decades that if there was a power loss during a crash event, the air bags would still deploy. And it was found out after, as part of all the investigations and congressional hearings that took place in early 2014, that that simply was not true." N.T., 8/26/15, at 59.

However, we do not agree with the PCRA court's conclusion that the necessary information to convert the disparate facts into a cogent defense

was "unavailable" to Ms. Ward-Green before January 23, 2015, the date Ms. Ward-Green received Dr. Baxley's expert report. PCRA Court Opinion, 12/28/15, at 9. Rather, we conclude that Ms. Ward-Green failed in her initial obligation to establish jurisdiction in the PCRA court by alleging and proving that the facts upon which her claim is predicated—those in Dr. Baxley's expert report—were unknown to her and could not have been ascertained by the exercise of due diligence before January 23, 2015. 42 Pa.C.S. § 9545(b)(1)(ii).

Following the September 3, 2010 accident, several events known to Ms. Ward-Green laid the groundwork for a cogent defense and/or and the filing of a PCRA petition. In September of 2010, the Bosch report was available. N.T., 8/26/15, at 31. That report revealed Ms. Ward-Green's high speed at five seconds before impact, her reduced speed at four through two seconds before impact, movement of the ignition switch to accessory mode at two seconds before impact, zero power at one second before impact, the path of the vehicle, and non-deployment of the airbags. In April of 2014, Ms. Ward-Green received a recall notice from GM regarding the ignition switch on her Cobalt. N.T., 8/26/15, at 79. In August of 2014, Ms. Ward-Green consulted an attorney, who filed a claim against GM's Settlement Fund on Ms. Ward-Green's behalf. *Id.* at 80. In October of 2014, Ms. Ward-Green received notice from the GM Settlement Fund that her claim was valid. *Id.* Also in late October of 2014, Attorney Robert Hilliard, who had

worked with Dr. Baxley on other GM ignition switch cases, began representing Ms. Ward-Green. *Id.* at 83.

Giving Ms. Ward-Green the benefit of the doubt, we conclude that, with the exercise of due diligence, the facts upon which she bases her new-facts claim could have been ascertained as of late October of 2014. Counsel's explanation for not filing within sixty days thereof is troubling: "Given the holidays, it was a little slower than usual, but then we immediately went to find an expert to analyze whether or not there was a defect in this vehicle." N.T., 8/26/15, at 13. Ms. Ward-Green did not retain that expert, Dr. Baxley, until January of 2015. *Id.* at 52. Moreover, the only new fact is the expert analysis of the disparate facts that were known to Ms. Ward-Green as early as September of 2010 and as late as October of 2014. We consider ***Commonwealth v. Lambert***, 765 A.2d 306, 342 (Pa. Super. 2000), instructive on this specific point.

Therein, the mother of a stabbing victim testified that she heard her dying daughter identify Ms. Lambert as the perpetrator. After a convoluted procedural history, Ms. Lambert presented experts at a PCRA hearing on the scientific impossibility of the victim's dying declaration. ***Lambert***, 765 A.2d at 337–340. In response, the Commonwealth presented the testimony of medical experts in support of the dying declaration. *Id.* at 340–341. The majority analyzed the proffered expert opinion under section 9545(b)(1)(ii), as follows:

> For purposes of our PCRA hearing, all this testimony comes under the heading of "after-discovered evidence." On the first issue, all of this evidence was available at trial. The essential facts, the autopsy photographs, the autopsy report and the essence of the dying declaration, were all well known in 1991 and 1992. Had Appellant chosen to do so, she could have called expert witnesses to testify as to what Drs. Baden, Smialek and Larson said at the PCRA hearing. Nothing about the essential facts as to the dying declaration has changed. The only after-discovered evidence is the expert analysis of those facts.... Expert opinion may well be a subsequent interpretation of the available evidence and might be "after-discovered" in the sense that no one inquired as to these opinions at the time of trial. But the essential facts, the evidence on which these opinions are based, are the same today as they were in 1991 and 1992.

*Lambert*, 765 A.2d at 341–342.

In this case, the initial facts from the Bosch report were the same on September 3, 2010, the date of the accident, as they were on January 23, 2015, the date of Dr. Baxley's expert report. N.T., 8/26/15, at 53–54. The additional facts regarding GM's defective ignition switch and non-deployment of air bags were available as early as February of 2014, the date of the GM recall, and as late as October of 2014, the date GM notified Ms. Ward-Green that her claim against the settlement fund was valid. *Id.* at 57–59, 80.

Dr. Baxley testified that one should—and he did—look at the Bosch report to determine if an airbag should have deployed. N.T., 8/26/15, at 38, 53 (referring to Joint Exhibit C at page 5 of 10). According to Dr. Baxley, "the crash event here was almost double the mandatory air bag deploy value for a 2007" Cobalt; therefore, the air bags should have deployed. *Id.* at 42. Dr. Baxley continued, "I believe that it would improve the chances of the

passenger surviving the injuries if the front air bags had deployed." *Id.* at 43. Dr. Baxley reached this conclusion based on information taken from the Bosch report. *Id.* at 43–45, 54. Dr. Baxley also concluded from the Bosch report that Ms. Ward-Green "traveled somewhere between 70 feet and 150 feet with no power steering, no power brakes and ultimately no air bags[.]" *Id.* at 46. In Dr. Baxley's expert opinion, Ms. Ward-Green lost control of the car somewhere between 140 feet and 70 feet before striking the pole "because she could not operate it without power steering and she did not have her power brakes any longer[.]" *Id.* at 49. As the Commonwealth asserts, all of these initial facts were available at the time of Ms. Ward-Green's plea, and she "could have found an expert to analyze them and offer possible explanations prior to GM's 2014 admission that a defective ignition switch was present in [Ms. Ward-Green's] vehicle." Commonwealth's Brief at 22–23.

As for analysis of the additional facts, Dr. Baxley stated that knowledge of the defective switch was not "capable of even being known until after the recall occurred in February and March of 2014." N.T., 8/26/15, at 49. However, Dr. Baxley confirmed the Commonwealth's assertion that the National Highway Traffic Safety Commission ("NHTSC") began investigating certain GM vehicle crashes that involved defective ignition switches and the loss of power and non-deployment of airbags in 2005. *Id.* at 66–67. Also, Dr. Baxley testified that he had testified in "many

GM ignition switch system cases," and "worked on several GM defective ignition switch cases with Mr. Hilliard [Ms. Ward-Green's counsel]." *Id.* at 49, 52–53. Finally, Dr. Baxley explained that he could not have testified to a causal connection between the ignition switch and the non-deployment of the air bags at the time of Ms. Ward-Green's plea because GM "had claimed for decades that if there was a power loss during a crash event, the air bags would still deploy. And it was found out after, as part of all the investigations and congressional hearings that took place in early 2014, that that simply was not true." N.T., 8/26/15, at 59. Yet, when presented with three similar crashes all identified in his January 2015 report (a 2005 Maryland case; a 2007 Wisconsin case, and a 2009 Pennsylvania case), Dr. Baxley acknowledged that he provided expert reports for the Wisconsin and Pennsylvania cases in April of 2014, after "GM admitted the defect existed." *Id.* at 66–68, 70 (referring to Commonwealth Exhibits 1, 2, and 3). Dr. Baxley's testimony suggests that he could have offered an expert opinion regarding Ms. Ward-Green's accident as early as April of 2014. This was two months after Ms. Ward-Green received the recall notice, four months before she hired an attorney, six months before her Settlement Fund claim was deemed valid, and eleven months before she filed her PCRA petition.

According to Mrs. Ward-Green, she spoke to an attorney in August of 2014 because she "had received the recall in the mail;" she had "seen the

commercial about the GM recall and the defective ignition switch;" and she "had her heart surgery done in 2010." N.T., 8/26/15, at 82. She further testified that the commercials "were saying that those lawyers were going against the GM company in pursuit of the ignition switch defect" because "there were so many other accidents prior to [hers] that had undergone this kind of conviction." *Id.* at 82–83. Attorney Hilliard, who had worked with Dr. Baxley in other GM ignition switch cases, began representing Ms. Ward-Green in late October of 2014, and the investigation into the post-conviction process began in November of 2014. *Id.* at 53, 80, 83. When asked by defense counsel, "In August 2014, you knew there was a problem with your car and in October, you knew that GM had accepted your car for settlement, right?" Ms. Ward-Green responded, "Yes." *Id.* at 83–84.

Based on the foregoing testimonial evidence, we conclude that Ms. Ward-Green has not offered a sufficient excuse as to why the facts upon which her claim is based could not have been ascertained through the exercise of due diligence and a PCRA petition filed within sixty days—at the latest—of her receipt of the settlement fund notice in October of 2014. Thus, we conclude Ms. Ward-Green failed to meet the initial jurisdictional threshold by alleging and proving that there were facts unknown to her and that she exercised due diligence in discovering those facts. 42 Pa.C.S. § 9545(b)(1)(ii); *Brown*, 111 A.3d at 176. Absent proper jurisdiction, the Commonwealth is correct: the PCRA court lacked authority to address the

substantive merits of Ms. Ward-Green's petition and to grant her collateral relief. Commonwealth's Brief at 29. Accordingly, we reverse the PCRA court's August 26, 2015 order.

Turning to the Commonwealth's second issue, it argues that the PCRA court erred in granting Ms. Ward-Green relief in the form of vacating her guilty plea. Commonwealth's Brief at 30. Having determined that the PCRA court lacked jurisdiction to address Ms. Ward-Green's petition, we need not address this issue.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2016