J-S56035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEREL BRITTON, | |
| Appellant | No. 1974 MDA 2015 |

Appeal from the PCRA Order October 9, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0000013-2015

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JULY 22, 2016**

Appellant appeals *pro se* from the order entered in the Court of Common Pleas of Dauphin County dismissing his second petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The relevant facts and procedural history are as follows: On October 18, 2004, the victim, Kenneth Pailen, drove to Harrisburg with the intent of purchasing illegal drugs.  He observed Appellant standing on a porch at a residence located on Schuylkill Street, and believing that he might be a drug dealer, Pailen stopped his car.  Appellant and his cohort, Donald James Sherrill, Jr., approached Pailen's car.  After looking at Pailen, Sherrill stated that he thought Pailen looked like a guy with whom Appellant may have

*Former Justice specially assigned to the Superior Court.

fought previously. In response, Appellant shot Pailen, who survived and testified against Appellant and his cohort at their joint jury trial.

The jury convicted Appellant of various crimes, including attempted homicide, and on April 12, 2006, the trial court imposed an aggregate sentence of twenty-one years to forty-two years in prison. On April 5, 2007, this Court affirmed Appellant's judgment of sentence on direct appeal. *See Commonwealth v. Britton*, 881 MDA 2006 (Pa.Super. filed 4/5/07) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court.

On or about April 7, 2008, Appellant filed a timely *pro se* PCRA petition, and counsel was appointed to represent him. The PCRA court provided notice of its intent to dismiss Appellant's first PCRA petition and granted counsel permission to withdraw. Thereafter, Appellant retained private counsel, who filed a response to the PCRA court's notice, and following a hearing, the PCRA court denied Appellant's first PCRA petition on February 3, 2011.

Appellant filed a timely appeal and raised in this Court the issue of whether trial counsel was ineffective in failing to call Appellant's cousin, Jalieta Britton, as an alibi witness at trial. Concluding Appellant was not entitled to relief, this Court affirmed the PCRA court's denial of Appellant's first PCRA petition. *See Commonwealth v. Britton*, 425 MDA 2011 (Pa.Super. filed 4/4/12) (unpublished memorandum). Appellant filed a

- 2 -

petition for allowance of appeal, which our Supreme Court denied on March

1, 2013. *See Commonwealth v. Britton*, 349 MAL 2012 (Pa. filed 3/1/13)

(*per curiam* order).

On or about May 1, 2013, Appellant filed a second *pro se* PCRA

petition, wherein Appellant alleged, *inter alia*, the following:

> On 3-22-13, my mother, Deidre Walker[,] received a letter from Calvin McKinney stating that his brother, Fred McKinney, aka, "CJ," committed the crime for which I am currently incarcerated for [*sic*]. In this letter, Calvin states that his brother's girlfriend, Jodi Moppin's dad, retired police detective Jim Rudy, covered up the case for him.

Appellant's *Pro Se* PCRA Petition, filed 5/1/13, at 3 ¶18(A).

By order entered on May 9, 2013, the PCRA court directed Appellant to

file "a copy of [the] letter referred to in Paragraph 18(A) of the Petition for

Post Conviction Relief, namely, the alleged notarized letter signed by Calvin

McKinney." PCRA Court Order, filed 5/9/13. Appellant filed a copy of what

he alleged to be Calvin McKinney's notarized letter.[1] The letter provided

verbatim the following:

> I'm writing you this letter because I can no longer stand to see Rel[2] sit in jail for something he didn't do. My brother, CJ, shot dude on Schuykill St. a few years back. I love Rel, but I love my brother more. I couldn't say nothing to Rel about knowing my brother did it, because he's my brother. I really hope that you can understand that. I thought Rel got that time

---

[1] We note the certified record includes only a portion of a letter, which does not bear a signature or otherwise identify the author by name.

[2] We assume that "Rel" refers to Appellant.

for something else.  I never knew he was in jail for that.  My brother's girlfriend's dad was a cop and he covered the case up for my brother.  My brother gave him the gun and he got rid of all the evidence.  I'm not sure what his name is but his girlfriend's name if I remember correctly is Jody.  I don't know what her last name is but she is always at bingo hall.  He said he shot him because he tried to take his drugs without giving him the money.  I'm not sure if this can help Derel or not, but I couldn't live with myself knowing Rel is in jail for something he didn't do.  My brother passed away a few years back while he was in jail.  And I kinda feel what it is like to loose someone in the system.  Maybe that was gods way of dealing with him for what he did.  Thats why I feel as though if I don't say something now god is going to continue to punish me.  I'm ready to change my life, but I don't think I can until I get this burden lifted off my chest.  Once again, I am sorry I didn't say anything sooner.  But hopefully in gods will this letter can help Rel out.

Appellant's Response to PCRA Court's May 9, 2013 Order, filed 5/20/13, attached exhibit (footnote added).

The Commonwealth filed a response, and by order entered on June 25, 2014, the PCRA court dismissed Appellant's second PCRA petition; however, on July 2, 2014, the PCRA court *sua sponte* vacated its June 25, 2014, order.[3]  The PCRA court then entered an order providing Appellant with notice of its intent to dismiss Appellant's second PCRA petition, and Appellant filed a *pro se* response to the PCRA court's notice.  By order

---

[3] We note that "a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505.  Accordingly, pursuant to Section 5505, the PCRA court had the power to vacate its June 25, 2014, order on July 2, 2014, since such occurred within 30 days of the entry of the initial order.

entered on October 9, 2015, the PCRA court dismissed Appellant's second PCRA petition, and this timely *pro se* appeal followed.

On appeal, Appellant has presented the following issues:

1. Whether the PCRA court erred in denying [Appellant's] PCRA petition as being untimely?

2. Whether the PCRA court abused its discretion when it did not constitute the statement made by Calvin McKinney [to be] after-discovered evidence?

3. Whether the PCRA court erred when it did not find PCRA counsels' [*sic*] ineffective for failing to raise new claims of ineffectiveness of trial counsel after new issues of arguable merit arose following [the] evidentiary hearing?

4. Whether the PCRA court abused its discretion when it failed to address [Appellant's] request for the reinstatement of direct appeal rights *nunc pro tunc*, due to PCRA and direct appeal counsels' abandonment?

Appellant's Brief at 4.

Preliminarily, we must determine whether Appellant's second PCRA petition was timely filed. ***See Commonwealth v. Hutchins***, 760 A.2d 50 (Pa.Super. 2000). "Our standard of review of the denial of PCRA relief is clear; we are limited to determining whether the PCRA court's findings are supported by the record and without legal error." ***Commonwealth v. Wojtaszek***, 951 A.2d 1169, 1170 (Pa.Super. 2008) (quotation and quotation marks omitted).

Pennsylvania law makes it clear that no court has jurisdiction to hear an untimely PCRA petition. ***Commonwealth v. Robinson***, 575 Pa. 500, 837 A.2d 1157 (2003). The most recent amendments to the PCRA, effective

January 19, 1996, provide that a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and the petitioner must prove:

(i)     the failure to raise a claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or the law of this Commonwealth or the Constitution or law of the United States;

(ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of Pennsylvania after the time period provide in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

"We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Marshall*, 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted).

Instantly, Appellant was sentenced on April 12, 2006, and this Court affirmed his judgment of sentence on April 5, 2007. Appellant did not file a petition for allowance of appeal with our Supreme Court. Therefore, Appellant's judgment of sentence became final thirty days thereafter, on Monday, May 7, 2007, when the time within which to file a petition for allowance of appeal expired. *See* Pa.R.A.P. 1113 (time for petitioning for allowance of appeal); 42 Pa.C.S.A. § 9545(b)(3) (setting forth when judgment of sentence becomes final); 1 Pa.C.S.A. § 1908 (setting forth rules for computation of time). Since Appellant filed the current PCRA petition on May 1, 2013, nearly six years after his judgment of sentence became final, the petition is patently untimely under the PCRA. *See* 42 Pa.C.S.A. § 9545(b)(1); ***Commonwealth v. Gamboa-Taylor***, 562 Pa. 70, 753 A.2d 780 (2000) (holding a PCRA petition filed more than one year after judgment of sentence becomes final is untimely and the PCRA court lacks jurisdiction to address the petition unless the petitioner pleads and proves a statutory exception to the PCRA time-bar).

Appellant attempts to invoke the timeliness exception of 42 Pa.C.S.A. § 9545(b)(1)(ii), claiming the facts disclosed in Calvin McKinney's notarized letter constitute newly-discovered facts. The Supreme Court has previously explained that the newly-discovered fact exception in Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were "facts" that were "unknown" to him and that he could not have ascertained those facts by the

exercise of "due diligence." ***Commonwealth v. Bennett***, 593 Pa. 382, 930 A.2d 1264, 1270-72 (2007). A petitioner must allege and prove previously unknown "facts," not merely a newly discovered or newly willing source for previously known facts. ***Marshall***, ***supra***.

Moreover, "[d]ue diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced." ***Commonwealth v. Williams***, 35 A.3d 44, 52 (Pa.Super. 2011) (citations omitted).

Additionally, as this Court has often explained, all of the time-bar exceptions are subject to a separate deadline.

> The statutory exceptions to the timeliness requirements of the PCRA are also subject to a separate time limitation and must be filed within sixty (60) days of the time the claim could first have been presented. ***See*** 42 Pa.C.S.A. § 9545(b)(2). The sixty (60) day time limit . . . runs from the date the petitioner first learned of the alleged after-discovered facts. A petitioner must explain when he first learned of the facts underlying his PCRA claims and show that he brought his claim within sixty (60) days thereafter.

***Williams***, 35 A.3d at 53 (citation omitted).

In the case *sub judice*, assuming, *arguendo*, Appellant met the initial 60-day threshold,[4] we conclude that Calvin McKinney's notarized letter does

---

[4] In his second PCRA petition, Appellant asserted his mother received the letter from Calvin McKinney on March 22, 2013, and she provided Appellant with a copy of the letter on that same date. ***See*** Appellant's *Pro Se* PCRA Petition, filed 5/1/13, at 3 ¶18(A), (B); Appellant's Brief at 11 ("Appellant
*(Footnote Continued Next Page)*

not provide "unknown facts," and constitutes, at most, a newly discovered or newly willing source for known facts. **Marshall**, **supra**.

For instance, during Appellant's trial, defense counsel explored at length the possibility that Fred McKinney, aka "CJ," was the shooter. In this regard, defense counsel cross-examined Detective John O'Connor in the presence of the jury as to whether Police Officer Julian Adams had informed him that the investigation revealed there might be "someone else who was a possible shooter in this case." N.T. Jury Trial, 1/9/06-1/13/06, at 217. Specifically, upon cross-examination, the following relevant exchange occurred between defense counsel and Detective O'Connor:

> **Q:** You testified earlier yesterday that part of what you all do as detectives is you are involved in other cases and you hear information and you go back for your roll calls and you talk about these matters, so that if anyone has information they can bring it to light to you, correct?
> **A:** Yes.
> **Q:** And in fact, that's how you came upon the name Donald Sherrill and the connection to 548 Schuylkill Street originally, correct?
> **A:** Detective Tim Carter, who is seated right there, provided me with the names (indicating).
> **Q:** And you received information in this case about another potential suspect, correct?
> **A:** Yes.
> **Q:** And when you received that information, you acted on it and treated that individuals as a suspect, didn't you?
> **A:** Of course.

_(Footnote Continued)_ ────────────

maintains that he became aware of the letter in March of 2013."). Appellant then filed his second PCRA petition on or about May 1, 2013.

**Q:** And when you investigated that suspect, it led you to a particular location or address, correct?

**A:** Yes.

**Q:** To interview that suspect who was by the name of Fred McKinney?

**A:** Yes.

**Q:** And you never at any point put together a photo array with Mr. McKinney's likeness in it, did you?

**A:** No. The victim identified your client and Donald Sherrill.

**Q:** My question was, you never at any point after identifying this suspect put that person in a photo array, did you?

**A:** No, I did not.

**Q:** And that person was an African American male, wasn't he?

**A:** Yes, he was.

**Q:** And that person at the time that you interviewed him was living with a retired Harrisburg Detective, correct?

**A:** Yes, and that Detective told me that on the night of the shooting he—

**Q:** I'm not asking you what anybody told you.

***

**Q:** You ultimately closed the case on that suspect after that interview at that retired Detective's house?

**A:** He was cleared, yes.

**Q:** And you had received that information that led you to this suspect from an officer Julian Adams?

**A:** Yes, he was a suspect at that time. He's no longer a suspect. He's cleared.

*Id.* at 261-63.

Additionally, defense counsel indicated he intended to call Officer Julian Adams as a witness to testify on behalf of Appellant. The trial court, out of the presence of the jury, directed defense counsel to question Officer Adams to establish whether his proffered testimony would have any probative value.

- 10 -

Upon questioning, Officer Adams indicated, in relevant part, that while he was working as a security officer at a bingo hall on October 21, 2004, a woman approached him, said her name was Margaret, and informed him that people were saying the police had the wrong person for the shooting at issue. *Id.* at 465-67. Specifically, he testified Margaret indicated people at the bingo hall were saying the shooter was a "person [who] goes by CJ or JC." *Id.* at 466, 467. Officer Adams indicated he provided this information in his supplemental police report, and he confirmed that Margaret had no "firsthand knowledge" but was repeating rumors she had heard. *Id.* at 467-68.

The trial court then questioned Detective O'Connor, out of the presence of the jury, as to whether "CJ" was Fred McKinney, and he indicated "I don't know off the top of my head, but I think he does go by Charles." *Id.* at 470. Detective O'Connor then indicated he spoke to Jodi Moppin about Fred McKinney. *Id.* Ultimately, the trial court excluded Officer Adams' proffered testimony on the basis it lacked any probative value and was based upon hearsay. *Id.* at 470-71.

As the aforementioned demonstrates, Appellant attempted to prove, at the time of his trial, that Fred McKinney, aka "CJ," was the shooter. Therefore, Calvin McKinney's letter, which suggested his brother, "CJ," was the shooter, did not provide "new facts," but merely constituted a newly discovered or newly willing source. *Marshall*, *supra*.

Furthermore, and in any event, inasmuch as Appellant attempted to prove at trial that Fred McKinney was the shooter, he has failed to explain why his attorneys did not contact or attempt to contact Fred's brother, Calvin McKinney. That is, Appellant failed to prove he exercised "due diligence" by taking reasonable steps to protect his own interests and discover the information Calvin McKinney set forth in his letter. **Williams**, **supra**.

Here, Appellant's PCRA petition is untimely, and he has failed to prove any exception.[5] Therefore, the courts lack jurisdiction to consider the merits of the issues presented in Appellant's second PCRA petition, and accordingly, we affirm.

Affirmed.

Judge Panella joins the Memorandum.

P.J.E. Bender files a Dissenting Memorandum.

---

[5] To the extent Appellant raises ineffective assistance of counsel claims, we note that "[t]his Court has stated previously that a claim for ineffective assistance of counsel does not save an otherwise untimely petition for review on the merits." **Commonwealth v. Ward-Green**, ___ A.3d ___, 2016 WL 3223507, *7 (Pa.Super. filed 6/10/16) (quotation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/22/2016</u>