J-S22013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERREN KEITH STUCKEY | : | |
| | : | |
| Appellant | : | No. 202 MDA 2025 |

Appeal from the PCRA Order Entered February 3, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000306-2016

BEFORE: LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:          **FILED: OCTOBER 21, 2025**

Jerren Keith Stuckey appeals from the order, entered in the Court of Common Pleas of Dauphin County, dismissing his petition filed pursuant the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

This Court has previously recounted the relevant facts as follows:

[Rayon Braxton] was found shot to death on the evening of November 27, 2015[,] in a warehouse that he was leasing and using to host parties.

The evidence at trial showed that [Stuckey] was at the warehouse at the time of the shooting and left the warehouse shortly after gunshots were heard in the area of the warehouse. Sean Edmonds, who worked as a disc jockey at parties at the warehouse, testified that he heard gunshots as he was arriving at the warehouse after 6:30 p.m. on November 27, 2015[,] for a party that night. Edmonds testified that when he entered the warehouse 15 or 20 seconds after he heard the gunshots, he saw

_____

[*] Former Justice specially assigned to the Superior Court.

[Stuckey] coming down the stairs and that [Stuckey] said "Oh, my God, watch out, they're up there shooting." [Edmonds] testified that he jumped back and let [Stuckey], who was wearing a hooded sweatshirt[,] go out, and that he saw [Stuckey] get into a car and drive away in reverse without turning on the headlights. Edmonds testified that he then left the warehouse and went to a nearby store for help. Edmonds testified that he and a person from the store headed back to the warehouse, that two women walked into the building ahead of them, and that when he went upstairs in the warehouse, he saw one of the women step back in shock and then saw [Braxton]'s body lying on the floor. He testified that he did not see [Stuckey] holding anything in his hands and did not see a gun on [Stuckey] when [Stuckey] was coming down the stairs and leaving the warehouse. In addition, [Stuckey] admitted to a police officer that he was at the warehouse.

Nathaniel Kump, who lived at a veterans' home near the warehouse, testified that he was sitting outside on the evening on November 27, 2015[,] in view of the entrance to the warehouse and heard six or seven gunshots. Kump testified that after he heard the gunshots, he looked in the direction where they were coming from and saw a man run out of the warehouse and get into a gray car with a missing hubcap that he had seen before at the warehouse and that he had seen [Stuckey] drive. [Kump] testified that the gray car then drove away from the warehouse in reverse at a high rate of speed and that[,] before the car left, he [briefly] saw another man [] near the warehouse door. Kump testified that[,] after the car left, he called 911 and walked toward the warehouse, saw a man from a nearby grocery store accompanied by another man go into the warehouse, and saw two women walk toward the warehouse. Kump further testified that after he heard the gunshots, he kept his eyes trained on the warehouse door, except for a second when the car passed him, and that no one else came out of the warehouse.

Evidence was introduced that the warehouse had only one entrance. The Commonwealth repeatedly stressed in both its opening statement and closing argument that [Stuckey] was the only person seen leaving the warehouse after the gunshots were heard and that this demonstrated that [Stuckey] was the person who killed [Braxton].

The seven bullets that were found in [Braxton]'s body and at the murder scene, the seven spent cartridge casings found at the

scene, and the live cartridges found at the scene that had sufficient markings were all discharged or ejected from the same gun, but the gun was not found. The car that was seen leaving the warehouse was found parked outside [Stuckey]'s girlfriend's apartment and one of the two identifiable fingerprints from the car was [Stuckey]'s. A hooded sweatshirt found in the car had gunshot residue on the left sleeve and front, but the right sleeve of the sweatshirt had only particles that could also have come from non-gunshot sources, and DNA testing of blood stains on the sweatshirt did not produce any interpretable results.

One of [Braxton]'s friends testified that [Stuckey] told her that [Braxton] owed [Stuckey] money and that if [Braxton] did not repay the money, [Stuckey] "was going to do what a man had to do and that he was going to kill [Braxton]." Other Commonwealth witnesses, however, testified that [Stuckey]'s financial dispute with [Braxton] appeared to have been resolved in the summer of 2015. When [Braxton] was found, he had over $362[.00] in cash in his pockets. [Stuckey] did not testify at trial.

*Commonwealth v. Stuckey*, No. 1416 MDA 2022, at *1-2 (Pa. Super. filed July 27, 2023) (unpublished memorandum decision) (internal citations omitted).

On October 20, 2016, the jury found Stuckey guilty of first-degree murder, and, on the same day, the trial court sentenced Stuckey to life imprisonment without parole. Stuckey filed a direct appeal to this Court, and, on June 26, 2018, we affirmed his judgment of sentence. *Commonwealth v. Stuckey*, No. 851 MDA 2017 (Pa. Super. filed June 26, 2018) (unpublished memorandum decision). Stuckey did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

On April 25, 2019, Stuckey filed a timely PCRA petition, which the PCRA court dismissed without a hearing on September 22, 2020. Stuckey's then-PCRA counsel did not appeal from the dismissal of his petition within thirty

days. Stuckey's subsequent PCRA counsel filed a petition seeking reinstatement of Stuckey's appeal rights *nunc pro tunc*. On September 27, 2022, the PCRA court entered an order reinstating Stuckey's right to appeal, *nunc pro tunc*, the dismissal of his PCRA petition.

Stuckey appealed on October 3, 2022, claiming the PCRA court erred in dismissing his claim without holding a hearing. On July 27, 2023, we vacated the PCRA court's order and remanded for the court to hold a hearing on the claim. **See Stuckey**, 1416 MDA 2022. On January 15, 2024, Stuckey filed a motion for recusal, which the PCRA court granted on January 18, 2024, and Stuckey's PCRA petition was reassigned. The newly assigned PCRA court conducted hearings on June 20, 2024, and December 17, 2024, before dismissing his petition on February 3, 2025. Stuckey timely appealed from that order, and he and the PCRA court have complied with Pa.R.A.P. 1925(b). Stuckey presents the following issues for our review:

(1) Whether the PCRA court erred in finding that counsel rendered effective assistance of counsel in failing to investigate and present Gregory Jackson[,] who witnessed other individuals fleeing from the scene after the homicide of [] Braxton, including a person who previously threatened Braxton with a gun, and the Commonwealth's theory was that Stuckey "was the only one with the physical opportunity to kill [] Braxton[.]"

(2) Whether, in the alternative, based on the PCRA court's findings concerning when [] Jackson may have come forward, [] Jackson's testimony would still constitute after-discovered evidence[,] which warrants a new trial where [] Jackson witnessed other individuals fleeing from the scene after the homicide of [] Braxton, including a person who previously threatened Braxton with a gun, and the

> Commonwealth's theory was that Stuckey "was the only one with the physical opportunity to kill [] Braxton [.]"

Appellant's Brief, at 6.

When reviewing an order dismissing a PCRA petition, we must "determine whether it is supported by the record and is free of legal error." *Commonwealth v. Cousar*, 154 A.3d 287, 296 (Pa. 2017). A PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to a PCRA court's legal conclusions. *Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019).

Before we may address Stuckey's issues on appeal, we must first determine whether the PCRA court had jurisdiction to consider his petition. Generally, a petition for PCRA relief must be filed within one year of the date the judgment of sentence is final. *See* 42 Pa.C.S.A. § 9545(b)(1). There are, however, exceptions to the timeliness requirement, set forth at 42 Pa.C.S.A. §§ 9545(b)(1)(i)-(iii). These exceptions include interference by government officials in the presentation of the claim, newly discovered[1] facts or evidence, and an after-recognized constitutional right. *See Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 783 (Pa. 2000). The timeliness requirements of the PCRA are jurisdictional in nature and, accordingly, a PCRA court cannot

---

[1] Following the Supreme Court of Pennsylvania's guidance, we refer to the exception codified at 42 Pa.C.S.A. § 9545(b)(1)(ii) as the "newly discovered fact" exception as opposed to the "after-discovered fact" exception to avoid confusing it with the "after-discovered evidence eligibility-for-relief provision set forth in subsection 9543(a)(2)." *Commonwealth v. Burton*, 158 A.3d 618, 628-29 (Pa. 2017).

hear untimely petitions. *Commonwealth v. Robinson*, 837 A.2d 1157, 1161 (Pa. 2003).

Here, Stuckey's judgment of sentence became final on July 26, 2018, when the time expired for him to file a petition for allowance of appeal with the Supreme Court of Pennsylvania. *See* 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 1113(a) (requiring petition for allowance of appeal to be filed within 30 days after entry of order of Superior Court). Stuckey, accordingly, had until July 26, 2019, to file a timely PCRA petition, and his present petition, filed on April 25, 2019, is timely. We turn now to addressing it on the merits.

Ineffective assistance of counsel claims require a petitioner show that counsel's performance was deficient and that the deficient performance prejudiced petitioner's defense. *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief for ineffective assistance of counsel based upon a failure to call a potential witness, a PCRA petitioner satisfies the performance and prejudice requirements of the *Strickland* test by establishing that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009) (citation omitted). To demonstrate the requisite prejudice, the petitioner must show that there is a reasonable probability that "the result of the proceeding would

have been different." ***Commonwealth v. Miller***, 231 A.3d 981, 993 (Pa. Super. 2020) (quoting ***Strickland***, 466 U.S. at 694).

Stuckey argues that his trial counsel failed to present Jackson's testimony at trial, which, he claims, "could have gutted the Commonwealth's entire theory[.]" Appellant's Brief, at 13. According to Stuckey, Jackson would have testified that he saw other individuals fleeing from the warehouse after Stuckey exited, one of whom had previously threatened Stuckey with a gun. ***Id.*** This evidence, Stuckey avers, "could have altered the outcome of the trial." ***Id.*** at 31.

In denying Stuckey's petition, the PCRA court's analysis focused, in part, on the third prong of the ***Strickland*** test—that Stuckey's trial counsel knew, or should have known, of the existence of the witness. ***See*** PCRA Court Opinion, 2/3/25, at 7-8 (unpaginated). The PCRA court identifies two lines from Jackson's testimony at the June 20, 2024 PCRA hearing wherein Jackson made statements indicating that he first met Stuckey after Stuckey's trial in the instant matter. ***See id.*** If Stuckey and Jackson met after Stuckey's conviction, Stuckey's claim would need to be brought as one for after-discovered evidence instead of ineffectiveness for failure to call a witness. ***See Gamboa-Taylor***, ***supra***.

Stuckey's contradictory testimony at the same hearing complicates the timeline as to when he was informed by Jackson that he had information relevant to Stuckey's trial. When asked when Jackson provided him with the information, Stuckey said "When I was going to court for this – well, after, but

it was basically I was in the county [jail] when this happened." N.T. PCRA Hearing, 6/20/24, at 30. Though he first indicated that it occurred while the below proceeding was ongoing, he responded affirmatively just a few questions later when asked if his conversation with Stuckey took place pretrial. *See id.* at 31.

Based on the record before us, it is not clear to this Court when Stuckey and Jackson's conversation took place; however, it is irrelevant to our ultimate disposition. Even if Jackson and Stuckey's conversation occurred following Stuckey's conviction, and, therefore, would need to qualify as after-discovered evidence to be admissible under the PCRA, it would not impact our determination.[2] Therefore, we will assume *arguendo* that Jackson and Stuckey spoke prior to Stuckey's trial and conviction and analyze Stuckey's claim as a claim for ineffective assistance of counsel based upon his trial counsel's failure to call Jackson to testify.

The PCRA court found this claim meritless because it did not consider Jackson to be a credible witness and because it did not find that his testimony was sufficient to refute the other evidence of guilt and change the outcome at

_____

[2] Because our conclusion rests on whether Jackson's testimony would have changed the outcome at trial, it would not change our determination if we analyzed the claim as after-discovered evidence instead of as a failure-to-call-a-witness claim. **See Commonwealth v. Cox**, 146 A.3d 221, 228 (to establish after-discovered evidence claim, petitioner must prove, *inter alia*, that evidence "would likely compel a different verdict"); **see Commonwealth v. Epps**, 240 A.3d 640, 653 (Pa. Super. 2020) (no prejudice where there was no reasonable probability trial counsel's failure to call a witness would have altered result of proceeding).

trial. The PCRA court noted that Jackson had been convicted of two counts of burglary, which are *crimen falsi* convictions and would have brought his testimony into question. Additionally, the PCRA court found it highly suspicious that, at the June PCRA hearing, Jackson only testified that the person he saw running from the warehouse was a "black male, approximately 5'11" tall, with braids or dreadlocks, and wearing either a blue or black hoodie." PCRA Court Opinion, 2/3/25, at 6. However, when Jackson testified for a second time at the December PCRA hearing, he identified the person he saw running as being named "Rome" and offered that Rome had previously threatened Braxton with a gun. *Id.* at 6-7.

We agree with the PCRA court and do not find that there is a reasonable probability Jackson's testimony would have changed the outcome at trial. First, based upon our review of the record, we agree with the PCRA court's determination of Jackson's credibility based upon his *crimen falsi* convictions and questionable testimony. **See** Pa.R.E. 609; **see also Sandusky**, **supra** (providing PCRA court's credibility determinations, when supported by record, are binding on this Court). Jackson's omission of key details his first time testifying, the contradictory and confusing nature of his testimony, and his prior convictions all support the PCRA court's determination regarding Jackson's credibility.

Second, we do not find that Jackson's testimony would have changed the verdict. Edmonds, a witness for the Commonwealth, testified that he heard gunshots as he was arriving at the warehouse the night of the shooting

and saw Stuckey coming from upstairs (where the shooting occurred) fifteen to twenty seconds after hearing the gunshots. Edmonds also testified that Stuckey was wearing a hooded sweatshirt, and a hooded sweatshirt was later found in Stuckey's car with gunshot residue on it. A different witness for the Commonwealth, Kump, testified that he kept his eye on the warehouse door after hearing the gunshots, and that he only saw one man run out of the warehouse's lone entrance. The car that was seen leaving the warehouse was later found outside Stuckey's girlfriend's apartment. A friend of Braxton's testified that Stuckey told her Braxton owed him money, and that Stuckey said he would kill Braxton if he did not repay him the money. Thus, in light of the above evidence of Stuckey's guilt, Jackson's discreditable testimony likely would not have changed the verdict at trial. Accordingly, Stuckey's claim is without merit.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/21/2025